UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LYNORE HORN,<br>Plaintiff<br><br>v.<br><br>SOUTHERN UNION CO. &<br>NEW ENGLAND GAS CO.,<br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | C.A. No. 07-142-S |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants Southern Union Co. and New England Gas Co. ("Defendants") move pursuant to Fed. R. Civ. P. 56 for summary judgment with respect to all counts asserted in Plaintiff Lynore Horn's Complaint. In support of this Motion, Defendants rely upon the accompanying Local Rule 56(a) Statement of Undisputed Facts with attached exhibits, and Memorandum in Support of Motion for Summary Judgment.

Respectfully submitted,

DEFENDANTS SOUTHERN UNION CO. &
NEW ENGLAND GAS CO.

By their attorneys,

NIXON PEABODY LLP

/s/ Neal J. McNamara
Neal J. McNamara (#4249)
Jillian Folger-Hartwell (#6970)
One Citizens Plaza, Suite 500
Providence, RI 02903
Tel: (401) 454-1000
Fax: (401) 454-1030
nmcnamara@nixonpeabody.com
jfolgerhartwell@nixonpeabody.com

Dated: March 3, 2008

CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served on Lynore Horn, 88 Alger Avenue, East Greenwich, RI 02818 via regular and certified mail, return receipt requested, this 3rd day of March, 2008.

/s/ Neal J. McNamara

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LYNORE HORN,<br>Plaintiff<br><br>v.<br><br>SOUTHERN UNION CO. &<br>NEW ENGLAND GAS CO.,<br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | C.A. No. 07-142-S |

**DEFENDANTS' MEMORANDUM**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendants Southern Union Co. and New England Gas Co. (collectively, "Defendants" or "Gas Company") move for summary judgment with respect to all claims asserted in Plaintiff Lynore Horn's ("Plaintiff") Complaint. Plaintiff's single-count Complaint alleges that Defendants terminated her employment because she suffered from a disability and failed to provide her with a reasonable accommodation in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq. ("ADA").

Defendants are entitled to summary judgment on Plaintiff's claims because Plaintiff cannot establish by a preponderance of the evidence, a *prima facie* case of disability discrimination. Specifically, Plaintiff cannot show that she is a "qualified individual with a disability" as the ADA requires because Plaintiff admitted that she could not return to her job in the Gas Company's leak survey department after her leave of absence. Moreover, Plaintiff did not request a reasonable accommodation from Defendants. What Plaintiff did seek – reassignment to non-existent positions for which she did not hold the proper qualifications – was not a reasonable accommodation under the ADA. For these and other reasons discussed below, Plaintiff's claims should be dismissed in full.

## **Facts**[1]

Plaintiff is a female who began working for Defendants' predecessor, Providence Gas, in 1989. Defendants' Statement of Undisputed Facts ("Stmt.") ¶¶ 1 & 8. After holding several positions with the Gas Company between 1989 and 1992, Plaintiff began working within the facilities maintenance department. Stmt. ¶¶ 9-13. In May 1999, Plaintiff transferred to the Gas Company's customer service department, where she undertook customer service training until October 1999. Stmt. ¶ 14. Plaintiff then voluntarily transferred back into the facilities maintenance department because of the possibility she would be involuntarily "bumped" into what she perceived to be a less favorable position if she remained in customer service. Stmt. ¶ 15. In September 2002, after a two-week stint in the meter reading department, Plaintiff transferred into the leak survey department. Stmt. ¶¶ 17-18.

In September 2003, Plaintiff began to seek medical care from Dr. Robert Marzilli, a psychologist. Stmt. ¶ 21. In February 2004, Plaintiff took a medical leave of absence. Stmt. ¶ 22. Dr. Marzilli advised Defendants that Plaintiff was suffering from "acute stress disorder" and should "remain out of work until further notice." Stmt. ¶ 23. In June 2004, Plaintiff returned to work in leak survey. See Stmt. ¶ 24. Shortly thereafter, in December 2004 – and after yet another leave of absence in the interim related to an alleged neck and/or back injury – Plaintiff claims that a co-worker at the Gas Company menaced her with a gun. See Stmt. ¶¶ 25-26. Plaintiff left work on December 7, 2004, and never returned. Stmt. ¶ 27. In early December 2004, Plaintiff began seeing Dr. Holly Tytell, a psychiatrist, in addition to Dr. Marzilli. Stmt. ¶ 28.

[1] For the sake of brevity and conciseness, Defendants recount only certain key facts material to the resolution of this case. For a complete recitation of all material undisputed facts, please refer to Defendant's Local Rule 56(a) Statement of Undisputed Facts.

Plaintiff's doctor communicated with the Gas Company on only three occasions during the one-year period while she was out of work on unpaid sick leave. Immediately after the alleged December incident, Dr. Marzilli wrote to Defendants indicating that he advised Plaintiff to "remain out of work for the immediate future." Stmt. ¶ 29. In February 2005, Dr. Marzilli reported that "psychological & emotional limitations prevent [Plaintiff] from returning to work at New England [Gas] in any capacity at this time" and indicated that the date upon which Plaintiff would be able to return to work was "not known at this point." Id. Defendants received no further communications from Plaintiff's doctors regarding her condition over the course of the nearly ten months that ensued prior to her termination. See Stmt. ¶ 30. Plaintiff's doctors never released her to come back to work. Id.

At all times relevant to the facts at issue in this Complaint, the Gas Company's practice was to inform an employee who had been on a leave of absence for one year that termination would occur unless the employee demonstrated that he or she had been released to return to work and that return was imminent. Stmt. ¶ 32. The Gas Company followed this practice when it notified Plaintiff, via a letter dated November 23, 2005, that Plaintiff was required to communicate with the Gas Company that she has been released to return to work and/or that her return was imminent. See Stmt. ¶ 33. If she did not do so, the letter advised, her employment would be terminated, automatically, without further notice, at the close of business December 7, 2005. Id.

After receiving this letter, Plaintiff discussed the possibility of returning to work with her doctors. Stmt. ¶ 35. Plaintiff's doctors advised her that they did not want her to return to work. Stmt. ¶ 36. Despite this advice, and despite not being released for return to work by her doctors, Plaintiff responded in writing to Defendants (the "Demand Letter"), by suggesting that she could

return to work in one of two positions: (1) "Executive Vice President of sexual Harassment and diversity training: For all of Southern Union gas co and Affiliates;" or (2) "Assistant to legal counsel, fourth floor." Stmt. ¶¶ 37-38. Plaintiff set forth a number of conditions, benefits, and perks that she would require in order to perform the above-referenced positions, including "a company car, unlimited sick days, and a four day work week . . . full medical" and a salary of "$300,000." Stmt. ¶ 39. These positions were not positions that currently existed within the Gas Company; rather, Plaintiff was suggesting that these positions be created for her. Stmt. ¶ 40. On December 7, 2005, D'Anna Soehnge, Vice President of Human Resources, responded to Plaintiff in writing, indicating that Plaintiff's conditions for her return to work were not reasonable, and because of her prolonged absence, and her refusal to return to her previous job classification, the Gas Company was terminating Plaintiff's employment. Stmt. ¶ 44.

## Discussion

### I. Summary Judgment Standard.

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Lee-Crespo v. Schering-Plough Del Caribe, Inc., 354 F.3d 34, 43 (1st Cir. 2003). To succeed in a motion for summary judgment, the moving party must first aver an absence of evidence supporting the nonmoving party's case. Boyle v. Brown Univ., 881 F. Supp. 747, 750 (D.R.I. 1995). Once the moving party meets this burden, it is upon the nonmoving party to present facts that show there is a genuine issue for trial. Id. The non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts." Fed. R. Civ. P. 56(e); Rodriguez v. Potter, 419 F. Supp. 2d 58, 63 (D.P.R. 2006). Indeed, a motion for summary judgment may be proper even in cases involving "elusive concepts" if the nonmoving party fails

to present proper evidence and rests merely on conjectural or conclusory allegations, improbable inferences, or unsupported speculation. Boyle, 881 F. Supp. at 750. Conclusory assertions and unsupported speculation do "not meet a party's burden of producing some defense to a summary judgment motion." Hedberg v. Ind. Bell Tel. Co., 47 F.3d 928, 931-32 (7th Cir. 1995).

## II. Plaintiff Cannot Establish a *Prima Facie* Case of Disability Discrimination Because She Cannot Demonstrate that She is a Qualified Individual with a Disability.

Plaintiff's claim must be dismissed because she cannot establish a *prima facie* case of disability discrimination. Section 12112 of the ADA provides that no employer "shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (2007). The burden-shifting framework set forth in McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973), applies to a claim of disability discrimination brought pursuant to the ADA. Freadman v. Metro. Prop. & Cas. Ins. Co., 484 F.3d 91, 99 (1st Cir. 2007). First, the plaintiff must establish a *prima facie* case of disability discrimination. Id. If the plaintiff presents sufficient evidence of such a case, the burden then shifts to the Defendants to "articulate a legitimate, non-discriminatory reason for its employment decision and to produce credible evidence to show that the reason advanced was the real reason." Tobin v. Liberty Mut. Ins. Co., 433 F.3d 100, 105 (1st Cir. 2005). If the employer produces such evidence, the burden then shifts back to the plaintiff to establish that the articulated reason is merely a pretext for discrimination. Freadman, 484 F.3d at 99.

To establish a *prima facie* case of disability discrimination under the ADA, a plaintiff has the burden to prove, by a preponderance of the evidence, that: "(1) she was disabled within the meaning of the ADA; (2) she was a qualified individual; and (3) she was discharged because of her disability." Phelps v. Optima Health, Inc., 251 F.3d 21, 24 (1st Cir. 2001); see Calef v. The

Gillette Co., 322 F.3d 75, 86 (1st Cir. 2003). A "[q]ualified individual with a disability means an individual with a disability who satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2(m) (2007); see Phelps, 251 F.3d at 24 (quoting Ward v. Mass. Health Research Inst., Inc., 209 F.3d 29, 32-33 (1st Cir. 2000)). In order to determine if an employee is "qualified" this Court must first inquire whether the individual can perform the essential functions of her position; and, if not, whether any reasonable accommodation by her employer would allow her to do so. Phelps, 251 F.3d at 24.

### A. Plaintiff Could Not Perform the Essential Functions of Her Position in Leak Survey.

There is no dispute that Plaintiff could not perform the essential functions of her position in the leak survey department. Subsequent to the alleged December 7, 2004, incident Dr. Marzilli advised that Plaintiff was to "remain out of work for the immediate future." Stmt. ¶ 29. In February 2005, Dr. Marzilli's office communicated to Defendants that Plaintiff's "psychological & emotional limitations prevent her from returning to work at New England [Gas] in any capacity at this time." Id. (emphasis added). Plaintiff's doctors never communicated with Defendants at any time after the alleged December 2004 incident that Plaintiff's condition had improved or that she was released to return to work. See Stmt. ¶ 30. When the Company corresponded with Plaintiff in November 2005 as to whether she would return to work, she flatly rejected the notion of returning to her former position. See Stmt. ¶ 38. Consequently, it is beyond dispute that Plaintiff was unable to perform the essential functions of her job in leak survey. Because Plaintiff could not perform the essential functions of her leak

survey position, she was not, by definition, "a qualified individual with a disability," 29 C.F.R. § 1630.2(m).

### B. Plaintiff's Accommodation Requests Were Not Reasonable and Would Not Allow Her to Perform the Essential Functions of Her Job.

Because Plaintiff could not perform the essential functions of her position, the Court must then inquire whether Defendants could make a reasonable accommodation to permit Plaintiff to return to work.[2] Reasonable accommodations under the ADA may include "job restructuring; part-time or modified work schedules; [or] reassignment to a vacant position . . . and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B) (2007); see Phelps, 251 F.3d at 27. The ADA does not require, however, that an employer "create a new job for an employee, nor [] re-establish a position that no longer exists." Phelps, 251 F.3d at 27; see Donahue v. Consolidated Rail Corp., 224 F.3d 226, 230 (3d Cir. 2000).

Moreover, a plaintiff bears the burden of proposing an accommodation that would enable her to perform her job effectively and showing that the proposed accommodation is facially reasonable. Kvorjak v. State of Maine, 259 F.3d 48, 55 (1st Cir. 2001). When the plaintiff's proposed accommodation is transfer to a vacant position, she must show that a vacant position exists for which she is qualified. Ozlowski v. Henderson, 237 F.3d 837, 840 (7th Cir. 2001). Furthermore, any potential accommodation necessarily entails a showing that such accommodation would effectively enable Plaintiff to perform the essential functions of her job. Kvorjak, 259 F.3d at 55.

---

[2] An employer may need, under some circumstances, to initiate an interactive process with the qualified individual in need of accommodation in order to determine if an accommodation may be provided, and what accommodation would be reasonable under the circumstances. Kvorjak v. State of Maine, 259 F.3d 48, 52-53 (1st Cir. 2001). Before this inquiry is undertaken, however, the Court must determine whether a genuine issue of material fact exists regarding the availability of a vacant position to accommodate the plaintiff. Ozlowski v. Henderson, 237 F.3d 837, 840 (7th Cir. 2001).

Here, Plaintiff requested a specific accommodation that would permit her to return to work; assignment to one of two specific jobs. In Plaintiff's Demand Letter she states "I am not allowed to return to a hostile environment. But there are jobs I can do at the gas company." Stmt., Ex. P. Plaintiff suggests two jobs she should be offered as an accommodation to her disability: (1) "Executive Vice President of sexual Harassment and diversity training: For all of Southern Union gas co and Affiliates;" or (2) "Assistant to legal counsel, fourth floor." Stmt. ¶ 38, & Ex. P. Plaintiff envisions that the duties associated with the "Executive Vice President of sexual Harassment" position would include "Traveling to all company's Making the changes needed for this company to be more user friendly . . . To establish a zero tolerance harassment policy, starting at executive level," as well as conducting investigations into complaints of harassment and "headline announcements" about employee terminations. Stmt. Ex. P. The "Assistant to legal counsel" position, Plaintiff asserts, would include duties such as assisting legal counsel with complaints of harassment, starting a zero tolerance policy about harassment, and helping legal counsel to resolve harassment claims. See id. Plaintiff then sets forth a number of conditions, benefits, and perks that she would "need" to adequately perform the above-referenced duties, including "a company car, unlimited sick days, and a four day work week . . . full medical" and a salary of "$300,000" or "Pay In the hundred of thousands." Stmt. ¶ 39 & Ex. P.

The absurdity of these suggestions is self-evident. First, neither of these positions existed at the Gas Company in 2005. Stmt. ¶ 40. Thus, these were not vacant positions that Plaintiff was suggesting she be permitted to transfer into; rather, Plaintiff was requesting that Defendants create these positions to accommodate her disability. As previously noted, the ADA does not

require an employer to create a new job for an employee as an accommodation. See Phelps, 251 F.3d at 27; Donahue, 224 F.3d at 230.[3]

Second, Plaintiff must show that if given one of the positions she suggests, she would effectively be able to perform the essential functions of those jobs. See Kvorjak, 259 F.3d at 55. Notwithstanding the obvious difficulty of providing such evidence for jobs that did not, and do not, exist, there is no evidence that Plaintiff could effectively perform the functions of either of her suggested positions in light of her doctor's admonitions that she should not return to work "in any capacity." Stmt. ¶ 29.

Lastly, Plaintiff cannot prove that she would be qualified to hold any such positions. As previously noted, it is Plaintiff's burden to show that a vacant position exists for which she is qualified. See Ozlowski, 237 F.3d at 840. As evidenced by her work history, Plaintiff primarily worked as a maintenance and/or janitorial employee during her employment with the Gas Company. See Stmt. ¶¶ 9-14 and Ex. C. In addition, she was trained to read gas meters, conduct leak surveys of gas lines, repair certain gas equipment and provide security as a night watchperson. See Stmt. ¶¶ 11-12; 18-19. None of these valuable skills, however, would qualify Plaintiff to perform the duties associated with the fictive jobs she identifies in her Demand Letter. Thus, although Plaintiff's creativity in envisioning these positions may be commended, Plaintiff cannot sustain her burden of showing that her requested accommodation was reasonable.

---

[3] In 2005 Plaintiff was a member of a union that had a collective bargaining agreement with Plaintiff's employer. See Stmt. ¶ 41. The collective bargaining agreement that covered Plaintiff's position in leak survey included provisions that prevented Plaintiff from being reassigned into another position covered by a collective bargaining agreement; rather, Plaintiff was required to bid into vacant union positions. Stmt. ¶ 43. Plaintiff did not suggest, in her Demand Letter, that she should be permitted to bid into any existing vacant positions. Stmt. ¶ 43.

### C. Defendants Gave Plaintiff a Reasonable Leave of Absence.

Plaintiff did not request additional leave as an accommodation. However, even if the Court construes her Demand Letter to include such a request – which the letter does not – the accommodation requested was far from reasonable. It is well settled that an extended medical leave may constitute a reasonable accommodation. Garcia-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 647 (1st Cir. 2000); Criado v. IBM Corp., 145 F.3d 437, 441 (1st Cir. 1998). The facts here, however, demonstrate that Defendants have met their burden of reasonably accommodating Plaintiff by providing a one-year leave of absence.

In Harris v. Circuit Court, 21 Fed. Appx. 431, 432 (6th Cir. 2001), the employer held open for one year the position of an employee who had taken a leave of absence for cancer treatment. At the end of the one year period, plaintiff was unable to inform her employer when she would be able to return to work. Id. Therefore, her employment was terminated. Id. The court granted the employer's motion for summary judgment stating that "[t]he ADA does not require an employer to give an employee an indefinite leave of absence when the employee cannot provide the expected duration of her impairment." Id.; see Taylor v. Pepsi-Cola Co., 196 F.3d 1106, 1110 (10th Cir. 1999) (summary judgment for the employer affirmed where "Plaintiff failed to present evidence of the expected duration of his impairment. At the time defendant terminated him, plaintiff had already been on leave for medical treatment for more than one year.").

Here, Defendants provided Plaintiff with a one year leave of absence. At the end of that period, Plaintiff did not provide any indication of when she would return to her previous position. See Stmt. ¶ 43. Indeed, she rejected outright the notion of returning to that position at any time on the basis that she was not able to perform the functions of the position due to her

alleged disability. See Stmt. ¶ 44. Although she identified two positions that she found acceptable, as stated above, those positions did not exist and she did not have the qualifications to fill any such positions. Just as in Harris, here it would be unreasonable to require the Gas Company to continue to keep Plaintiff on the roll as an employee, with a right to return to her former position, where there is no prospect of her return, and she has in fact rejected the very notion of returning.

## Conclusion

For the foregoing reasons, Defendants request that this Court dismiss all claims associated with Plaintiff's complaint, with prejudice, and enter final judgment on behalf of Defendants in this matter.

Respectfully submitted,

SOUTHERN UNION CO. and
NEW ENGLAND GAS CO.

By its attorneys,

/s/ Neal J. McNamara
Neal J. McNamara (#4249)
Jillian S. Folger-Hartwell (#6970)
NIXON PEABODY LLP
One Citizens Plaza
Providence, RI 02903
(401) 454-1000
(401) 454-1030 (facsimile)
nmcnamara@nixonpeabody.com
jfolgerhartwell@nixonpeabody.com

Dated: March 3, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served on Lynore Horn, 88 Alger Avenue, East Greenwich, RI 02818 via regular and certified mail, return receipt requested, this 3rd day of March, 2008.

/s/ Neal J. McNamara