UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

LYNORE HORN, :
Plaintiff :
:
v. : C.A. No. 07-142-S
:
SOUTHERN UNION CO. & :
NEW ENGLAND GAS CO., :
Defendants. :

**DEFENDANTS' LOCAL RULE 56(a) STATEMENT OF UNDISPUTED FACTS**

Defendants Southern Union Co. and New England Gas Co. (collectively referred to as "Defendants" or "Gas Company") submit this Local Rule 56(a) statement of undisputed facts in support of their Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56.

**The Parties**

1. Plaintiff Lynore Horn ("Plaintiff") is a female who was a citizen of Rhode Island at all times relevant to this litigation.

2. Defendant Southern Union Co. is a Delaware corporation with its principle place of business in Pennsylvania.

3. Defendant New England Gas Co. is a d/b/a of Southern Union Co.

4. Defendants Southern Union Co. and New England Gas Co. are the corporate successors to Providence Gas Co. ("Providence Gas"). Defendants acquired Providence Gas effective March 1, 2001.

5. Throughout all times relevant to this litigation, Providence Gas or Defendants conducted the business of selling natural gas for home heating and other purposes within the State of Rhode Island.

6. On February 22, 2006, Plaintiff filed a charge of discrimination against defendants with the Rhode Island Commission for Human Rights alleging that she was terminated from her employment in December 2005, based on her alleged disability, post-traumatic stress disorder. See Plaintiff's Charge of Discrimination, dated February 22, 2006, attached hereto as Ex. A.

7. Plaintiff filed her judicial complaint alleging violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq. ("ADA"), on April 2, 2007.

**Plaintiff's Employment History**

8. Plaintiff became employed with Providence Gas in 1989 and worked continuously for Providence Gas, and later Defendants, until December 2004.

9. Plaintiff was hired for the position of cleaning person in April 1989. In this position Plaintiff performed a variety of janitorial duties. See Deposition of Lynore Horn, Vol. I, dated Sept. 19, 2005, at 32:15 - 33:7, relevant portions of which are attached as Ex. B.

10. In approximately October 1989, Plaintiff's job changed from cleaning person to meter reader. Ex. B at 34:12-20; See Occupational Classification Record of Lynore Horn, attached hereto as Ex. C.

11. As a meter reader, Plaintiff was assigned various routes and would travel to these assigned routes to perform a variety of tasks for customers, including collecting delinquent payments from customers. See Ex. B at 139:24 - 140:5.

12. Less than one year later, in June 1990, Plaintiff's job changed to night watchperson. Ex. B at 36:2-7; Ex. C. In her position as night watchperson Plaintiff's duties included checking the building to ensure it was secure and washing and waxing floors. Ex. B at 40:22-25.

13. In approximately January 1992, Plaintiff's job title was changed to facilities maintenance person. Ex. B at 38:12-19; Ex. C. Plaintiff's duties in this job consisted of "mostly cleaning." Ex. B at 44:18-25.

14. In approximately May 1999, Plaintiff was transferred to the customer service department after applying for a posted job opening there. Ex. B at 55:12-13; Ex. C. Plaintiff spent five and one-half months training for the customer service position. Ex. B at 55:19-24. Her duties during the training period consisted of attending courses and traveling with other employees to learn how to fix gas appliances. Ex. B at 55:24 – 56:3.

15. Plaintiff decided to leave customer service in October 1999, because she was informed by management that the impending acquisition of Providence Gas by Southern Union Co. placed her at risk of being "bumped" to a less favorable position in the construction and maintenance department because of her low seniority within customer service. Ex. B at 57:7-19; See Deposition of Lynore Horn, Vol. II, dated April 10, 2006, at 149:19 – 152:3, relevant portions of which are attached hereto as Ex. D.

16. In October 1999, Plaintiff voluntarily chose to return to the facilities maintenance department, and resume her janitorial and other maintenance-type duties. See Ex. B at 63:25 – 64:5. Ex. C.

17. On or about September 1, 2002, Plaintiff moved to the meter reading department, but remained in that position for less than two weeks. Ex. B at 73:24 – 74:4; Ex. C.

18. On or about September 15, 2002, Plaintiff moved into the leak survey department and worked in that position until December 7, 2004. Ex. B at 78:1-3; Ex. C. In leak survey, Plaintiff and her co-workers were responsible for responding to and monitoring suspected or

reported gas leaks throughout Rhode Island. See Affidavit of Clifford Richer, attached hereto as Ex. E, ¶ 3; Ex. B at 81:3-5.

19. As part of her duties, Plaintiff conducted routine leak surveys. Leak survey is conducted by either walking survey, i.e., the leak surveyor gets out of the survey vehicle and monitors leaks while walking and using a hand-held monitoring device, or driving survey, i.e., the leak surveyor drives very slowly through the survey area using a leak monitoring device that is attached to the survey vehicle. Consequently, leak surveyors spend the vast majority of their time in the field. Ex. E ¶ 4.

20. During the time that Plaintiff was employed in the leak survey department, she was required to train in the construction and maintenance department ("C&M") on a temporary basis. The C&M position included job duties such as digging ditches, using jack hammers, installing gas pipes and new customer services. Ex. B at 85:20-24.

**Plaintiff's Termination**

21. Plaintiff began to seek medical care from Dr. Robert Marzilli, a psychologist, in September, 2003. See February 18, 2004 letter from Dr. Robert Marzilli, attached hereto as Ex. F.

22. In February 2004, Plaintiff took a medical leave of absence. See Notification of Family/Medical Leave form, dated Feb. 18, 2004, attached hereto as Ex. G.

23. In February, 2004, Dr. Marzilli advised Defendants that Plaintiff was suffering from "acute stress disorder" and should "remain out of work until further notice." Ex. F.

24. In June, 2004, Dr. Marzilli released Plaintiff to return to work in leak survey. See June 4, 2004 letter from Dr. Robert Marzilli, attached hereto as Ex. H.

25. Plaintiff took another leave of absence in August 2004 due to an alleged back and/or neck injury. See Letter to Dr. Izzi, dated August 18, 2004, attached hereto as Ex. I.

26. On December 7, 2004, Plaintiff claims that a co-worker at the Gas Company menaced her with a gun. See Deposition of Lynore Horn, dated Jan. 8, 2008, at 31:11-14, 44:10-45:17, relevant portions of which are attached hereto as Ex. J.

27. Immediately after this alleged December 7, 2004 incident, Plaintiff left work and never returned. See Affidavit of D'Anna Soehnge ¶ 5, attached hereto as Ex. K.

28. Shortly after Plaintiff's last day of work in December, 2004, she began seeing Dr. Holly Tytell, a psychiatrist, in addition to Dr. Marzilli. Ex. J at 4:3-15, 53:16-20.

29. In December 2004, Dr. Marzilli provided Defendant with a letter indicating that he advised Plaintiff to "remain out of work for the immediate future." On February 17, 2005, Dr. Marzilli's office completed a Modified Duty Assessment form indicating that Plaintiff's "psychological & emotional limitations prevent her from returning to work at New England [Gas] in any capacity at this time." On February 28, 2005, Dr. Marzilli completed a Certification of Health Care Provider form indicating that the date upon which Plaintiff would be able to return to work was "not known at this point." See Letter from Dr. Robert Marzilli; dated December 7, 2004; Modified Duty Assessment form, dated February 17, 2005; Certification form, dated February 28, 2005, copies of which are attached hereto as Ex. L.

30. Defendants received no other communications from Plaintiff's doctors and Plaintiff's doctors never released her to come back to work prior to her termination. Ex. K ¶ 8.

31. The Gas Company's Return From Family/Medical Leave Policy provides, in part: "The company may fill any position left vacant by an employee who has exhausted FMLA and

has continued on an extended approved medical leave for no more than a total of 12 consecutive months." Return From Family/Medical Leave Policy, attached hereto as Ex. M.

32. Pursuant to that Policy, at all times relevant to the facts at issue in this Complaint, the Gas Company's practice was to inform an employee who had been on a leave of absence for one year that termination will occur unless the employee demonstrates that he or she has been released to return to work and that return is imminent. See Ex. K ¶ 9.

33. On November 23, 2005, Joan Chafee, the Supervisor of Labor Relations for New England Gas, sent a letter to Plaintiff, which stated "unless you notify the Company that you have been released to return to work and your return to work is imminent, your employment will terminate automatically without further notice at the close of business December 7, 2005." See Letter from Joan Chafee, dated Nov. 23, 2005, attached hereto as Ex. N.

34. The Gas Company sent similar letters to other employees who, like Plaintiff, had been out of work for 12 months. Ex. K ¶ 10.

35. After receiving the November 23, 2005 letter from Joan Chafee, Plaintiff discussed the possibility of returning to work with her doctors. See Ex. J at 63:2-14.

36. Both Dr. Marzilli and Dr. Tytell expressed that Plaintiff should not return to work in or around late November/early December 2005. See Ex. J at 63:2-14; Deposition of Dr. Robert Marzilli, dated April 21, 2006 at 87:17-23, relevant portions of which are attached hereto as Ex. O.

37. Plaintiff's doctors never notified Defendants that Plaintiff was released to return to work in 2005. See Ex. K ¶ 8.

38. In response to Ms. Chafee's November 23, 2005 letter, Plaintiff wrote to Ms. Chafee indicating that she could not return to her previous job, but there were two jobs she could

perform at the Gas Company: (1) "Executive Vice President of sexual Harassment and diversity training: For all of Southern Union gas co and Affiliates;" or (2) "Assistant to legal counsel, fourth floor." See Letter from Lynore Horn to Joan Chafee ("Demand Letter"), attached hereto as Ex. P.

39. Plaintiff set forth a number of conditions, benefits, and perks that she would require to perform the above-referenced positions, including "a company car, unlimited sick days, and a four day work week . . . full medical" and a salary of "$300,000." See Ex. P at 2.

40. These positions were not positions that currently existed within the Gas Company; rather, Plaintiff was suggesting that these positions be created for her. Ex. K. ¶ 12.

41. In 2005 Plaintiff was a member of a union that had a collective bargaining agreement with Plaintiff's employer. See Collective Bargaining Agreement between New England Gas, Co. and United Steelworkers of America, AFL-CIO-CLC, Local 12431-01, 2002-2007, attached hereto as Ex. Q.

42. The collective bargaining agreement that covered Plaintiff's position in leak survey included provisions that prevented Plaintiff from being reassigned into another position covered by a collective bargaining agreement; rather, Plaintiff was required to bid into vacant union positions. Ex. Q, art. XI.

43. In Plaintiff's Demand Letter, she did not suggest any union positions that she could take that would permit her to return to work. See Ex. J at 68:3-12; Ex. P.

44. Consequently, on December 7, 2005, D'Anna Soehnge, Vice President of Human Resources, responded to Plaintiff in writing and terminated her employment because she refused to return to her previous job classification, and her conditions for her return to work were

unreasonable. See December 7, 2005 letter from D'Anna Soehnge to Lynore Horn, attached hereto as Ex. R.

Respectfully submitted,

DEFENDANTS SOUTHERN UNION CO. &
NEW ENGLAND GAS CO.

By their attorneys,

NIXON PEABODY LLP

/s/ Neal J. McNamara____________
Neal J. McNamara (#4249)
Jillian Folger-Hartwell (#6970)
One Citizens Plaza, Suite 500
Providence, RI 02903
Tel: (401) 454-1000
Fax: (401) 454-1030
nmcnamara@nixonpeabody.com
jfolgerhartwell@nixonpeabody.com

Dated: March 3, 2008

CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served on Lynore Horn, 88 Alger Avenue, East Greenwich, RI 02818 via regular and certified mail, return receipt requested, this 3rd day of March, 2008.

/s/ Neal J. McNamara____________