UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

LYNORE HORN
Plaintiff

V C.A. No. 07-142 S

SOUTHERN UNION GAS COMPANY
NEW ENGLAND GAS COMPANY
Defendants

**PLAINTIFFS" MOTION FOR OPPOSITION TO SUMMARY JUDGMENT**

Let the Plaintiff Pro Se, Lynore Horn move pursuant to fed.r.Civ.P.56 for Opposition for Summary Judgment. The plaintiff is entitled to and has provided supported evidence of disputed facts that would require trial .

In support of this motion, The Plaintiff Pro Se, Lynore Horn will rely upon the accompanying Local Rule 56(A) statement of facts, attached exhibits, and Memorandum in opposition of Motion for Summary Judgment.

Let the court grant a jury trial .

Respectfully Submitted
Plaintiff Pro Se Lynore Horn
88 Alger Ave East Greenwich 02821

Dated : April 7, 2008

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

LYNORE HORN
Plaintiff

V. C.A. NO. 07-142S

SOUTHERN UNION GAS CO
NEW ENGLAND GAS COMPANY

**PLAINTIFFS' MEMORANDUM IN OPPOSITION OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Plaintiff, who, by her own representation as pro se, files her Memorandum in Opposition of Motion for Summary Judgment. Pursuant to Fed.R.Civ.P.56 (b) as follows:

"The Law should be a shield for the weak and powerless, not a club For the powerful. "Gov Roy Barnes, 2004 Equal Justice Conference. The Plaintiff is entitled to and has provided supported evidence of disputed facts that would require trial. The Plaintiff has shown is a member of a protected class. That the employer: the New England Gas company owned by Southern Union Gas had Prior knowledge of a disability. Moreover the plaintiff did not receive reasonable accommodation. The record reveals no such offer of accommodations were made or even attempted.

The company made no effort to guard the plaintiff against danger – The company did make many considerations for alcoholics, drug addicts or men with aggressive behavior. Yet when they became aware of the plaintiffs' PTSD (post traumatic stress disorder) No reasonable accomadations were made for the plaintiff's disability.

## EMPLOYERS WHO BEHAVE IN A CONSISTENTLY DISCRIMATORY MANNER OUGHT TO BE HELD ACCOUNTABLE FOR THAT CONDUCT

The Plaintiff's ability to reach trial should survive a motion for summary judgment When sufficient facts are alleged to establish both defendants' supervisory involvement in the harassment and factual issues as to the lack of "reasonable care "and the Plaintiff acted reasonably to stop the harassment.

It is apparent even to a lay person – The expert's evaluation is essential. The following physician's reports should have us focus on the seriousness – the duration and nature of what the plaintiff experienced. The extreme and outrageous conduct on the part of the defendant constituted habitual behavior – verbally or physically aggressive or violent.-then focusing on the seriousness of firearms. Where this Plaintiff was in imminent danger of bodily harm at the hands of another.

## AMERICAN WITH DISABILITIES ACT

The ADA prohibits discrimination against Qualified individuals with disabilities . An individual is considered to have a disability if she has a physical or mental impairment that substantially limits one or more major life activity . A reasonable accommodation may include " job restructuring , part time or modified work schedules; reassignment to a vacant position ; acquisition or modifications of examinations, training material, or policies; the provision of qualified readers or interpreters; and other similar accommodations for individuals with disabilities " 29 CFR :1630.2(0) (2) (ii)

**FACTS OF THE CASE**

The plaintiff, Lynore Horn is a female – who began working at Providence Gas Company the defendant's predecessor, in 1989. Shortly after she began her employment she was abused with discriminatory treatment. As stated in case 04-434S still an ongoing case.

In 1994 -the plaintiff reported to Bob Ringman an executive of Providence gas, that a Gun had been held to her head in the Dexter street garage. That guns beings sold by Alan Dionne, on gas company property allowed - Paul Cardin to lift a gun and hold it to the plaintiffs head. – There is no fact in record to indicate that Paul Cardin or Al Dionne received any discipline whatsoever. Yet in Interrogatory #5 Henry Butler said "No one verified that a gun had been in the garage of Dexter Street. Yet attached from the accumulative amount of evidence it is apparent that guns were sold – and seen at the Dexter location by many people; (In Section A) Note Don Brown Spoke to Bud Butler about Rifles being stored in the garage

Threats of violence: hurt in elevators, thrown off loading docks – were all reported to the nurse in the up coming years. The perpetrator was Paul Cardin, repeating "a message from Bud Butler "As in the nurse's statement: she was to leave out the; Name of the other person on all reports. (Section B)

On May of 2003 the plaintiff asked her boss (Cliff Richer) who was degrading her Age and weight- and name calling - to stop: and he stated "If Barbara can handle it why

Can't you "Barbara was the only other woman in the dept. On May 30 2003 the plaintiff went to Cliff's boss "Mike McGuire ". Diary attached (section B).

Cliff Richer was spoken to His reply to his boss was ""She is a pain in the Ass". The plaintiff was then threatened by Richer, her boss not to go over his head in management again "She was to learn the "Chain of command "To tell her complaints only to him."

Mike McGuire resigned from New England Gas Leaving no boss for a few months but the plaintiff continued to Complain. To the company Nurse (Kathy Wall) also Mark Crozier (a supervisor in the field) about continued abuse by her boss escalating to Stories of black men being dragged by their penis and graphic stories of black woman Being raped and physical violence. The plaintiff being slammed in her chair letting the Wheels ram the plaintiff into the cafeteria like table she had as a desk. Sexual movies on Coworker's computers, with violent and graphic sexual sounds. The plaintiff went to the Next boss over cliff Richer – Bob Ringman. A meeting was held with a steward; Cliff Richer: and the plaintiff and Bob Ringman in February of 2004; the meeting ended with Cliff and the plaintiff were not to speak. Bob Ring man was going on vacation when he Returned he would address it. The plaintiff had a meeting alone with Mr. Ring man asking him to talk to the nurse (Kathy Wall ) and Mark Crozier –The plaintiff stated That "I was scared of Cliff Richer " The company fired Bob Ring man after his return from vacation. In 2003 the plaintiff began seeing Dr Robert Marzilli, a licensed clinical psychologist .

.Dr Marzilli who advised the company On February 18, 2004 (Letter section D) "After talking to her at length, it became clear that she was suffering from an acute stress disorder, which appeared to be work related, "On 02/17/2004 Travelers Insurance was told of the workers compensation injury; which they denied on 03/02/2004. A subsequent report was provided to Travelers Insurance by plaintiff'" physician Dr. Marzillis'.note" . The plaintiff was not sent to a doctor by Travelers just denied the claim. On June 4, 2004 Dr Robert Marzilli wrote a note that the plaintiff could return to work on June 7, 2004. His note stresses "It should be noted that Ms Horn is capable of returning to her customary job only if the harassment, which she has experienced , ceases. If this cannot be assured , then I would insist that she be reassigned to a different department . I trust that you understand the importance of this . "(section E )

New England Gas company Nurse or Safety and health coordinator responded with a letter saying the plaintiff even though the plaintiff was denied workman s comp and had To get TDI – the company was sending the plaintiff to Life watch to an EAP to have an disability management evaluation (letter from company section E) on 5/20/04 the company Nurse Kathy Wall contacted Life watch. As stated on Life watchs contact sheet "client was having some problems with her supervisor prior to leaving in February and had come into Kathy's office crying prior to being out on stress leave. A work mans compensation case was filed … " was denied "

The life watch form states workplace violence as the assessed problem. On 5/28/2004 The PLaintiff met with Mr. Watts, He states in his notes" It was life watch E.A.P's opinion that she is unprepared to return to work at this time ". (Section E) On June 15, 2004: Holland and Knight sent a letter sending the plaintiff back to the same job and same boss : On June 21, 2004 – David Black Esq. and D'Anna Soehnge and Attorney McNamara Over road the company's Dr and sent the plaintiff back to the same hostility. Stating in letter " however, upon her return to her position , in the event that Ms Horn experiences any behavior from either co-workers or supervisors that she believes is either harassing or offensive, she should immediately contact D'Anna Soehnge, the Vice President of Human Resources. You should similarly feel free to communicate to me ( letter written by Attorney Neal McNamara) any complaints that Ms Horn has regarding her work environment. (Letter section G)

The Plaintiff returned to the same department and the same boss on June 21, 2004; Shortly after returning to work, the abuse started again. Worse more physical; slammed, Singing to music using sexual violent words, .The plaintiff was reminded by Myrle Dean and Cliff Richer ( plaintiff boss ) that Deans son is an East Providence police officer – That he got away with assault during the lock out and feels he could get away with murder if he had to – and Ray Allen from the PUC is their friend they could do any thing. Even murder;

The boss would laugh as a co worker would walk into work and say I feel like killing Someone today is it you blondie. Directly to the plaintiff.

The plaintiff called human resources and was told they could not talk on the phone about harassment that an appointment needed to be made. It took many calls for the Human Resources Vice President D'Anna Soehnge for her to schedule any time. An Appointment was made for July1,2004 .

The plaintiff called Holland and knight on several occasions crying and begging to speak to attorney Neal McNamara – as stated in his letter he should be contacted – no one would allow the call through . (letter section G )

The July 1, 2004 meeting – Christine Stamp and Jerry Porter: stayed with the plaintiff in The lunch room till she was allowed to speak with the vice president of Human resources D'Anna Soehnge about the abuse:.

At the meeting Vice President of Human Recourses D. Soehnge, stated she had already talked to Mike McGuire: and a copy of his diary was being sent to her and she had Already spoken to Bob Ringman .The Plaintiff stated "Things are much worse "Told Pornographic scenes – like working in a bar violent – sexual – talked of dragging a black Man by the penis – she said you must be misunderstood; the plaintiff said no she had Tapes – diaries – pictures –The meeting ended with the vice president D'Anna Soehnge saying she would Take care of everything.

The plaintiff never saw the Vice President, physically again but spoke to her begging her to do something . On the last day they spoke she said there is no silver bullet to your problem.

On July15, 2004 a job was posted for a supervisor of customer field service: ( section H ) The Plaintiff having customer service training: six years of college – a boilers operator license – from the state of Rhode Island . As stated in her resume also owned a small business in the past was well qualified. In the past men with no knowledge of customer service, straight from human resources, and no training had the supervisor job previous. The plaintiff applied for the job and went to an interview. Cliff Richer her boss yelled at her for going to the interview - was screaming that she was not allowed to get changed ( out of a union uniform ) to apply for the job and threatened by him , If she ever applied for another job – with out his permission she would "Pay for it ". The supervisors' job was not given to the plaintiff : Nor any union job : in Fall River , Valley gas or in Dexter street or Weybosset street locations that came down to her in seniority -she was told she could not have them , Grievances were put in by the union ( section H ) August 19, 2004 The plaintiff was hurt at work: resulting in a neck injury _ again travelers insurance was notified and they denied the claim. (Section I) In September of 2004 : sexual jokes were being left for the plaintiff ; remember the plaintiff did not have a computer with her job The union was told of the ongoing physical now additional harassment : and sent to Vice president of human resources again asking for help .

In October – Cliff Richer was hostile, yelling, screaming. Valley Gas had a Mercury spill from old paint cans stored in a shack – Cliff Richer was the supervisor that put Mercury in the cans and was upset that the police wanted knowledge of what was on the grounds. The plaintiff was shaking and dry heaving: from panic attacks – Cliff informed the plaintiff that her shaking was from mercury in her truck – she was the only leak survey person driving an old customer service vehicle. Her boss Cliff Richer told her she would have retarded children from the mercury in her body just like the men who stole the mercury from Valley Gas – he told the plaintiff she is dead like them.

The ending weeks were filled with damage to the plaintiffs' truck . The glass smashed out of every window – and Many times safety equipment missing . .The company had a policy if you did not have safety equipment you could be written up by management .

**On December 7, 2004 the plaintiff walked into work**

**a fight was taking place**

in the hallway near the time clock – The plaintiff got shoved, when she arrived in the Dexter street leak survey department – they were talking of guns. How dangerous it was on the job these days. The boss was laughing. And adding comments.. Meryl Dean The police officers father – handed a shiny metal piece to Barbara Alderman . When the plaintiff left the boss's cubicle **the plaintiff saw a gun on Barbra Alderman**;

The plaintiff is blurry as to all facts: her breathing tightness of her throat – she had a fight or flight feeling … the plaintiff ended up in the emergency room the Doctor called the police to the hospital – Several days latter life watch – ( The company's doctor evaluation in early 2004 ) saw the plaintiff and sent her to Butler hospital - )

The plaintiff only dealt with Butler hospital or her attorney for many months.

On 12/28/04 – The company received a letter from Dr Shea – From Butler Hospital – Nature of illness Post traumatic Stress Disorder ( section O ) and on 2/28/05 The company was sent Certification of health care provider form from Dr Marzilli – Both forms were sent to 477 Dexter street – which is the gas company : The safety and Heath office which is the office of the nurse Kathy Wall .

The second letter 2/28/05 States :" some restrictions are due to medications . most are psychological and refer to work at the gas company in particular – Patient is seen weekly or bi-weekly for counseling . also seen weekly at butler Hospital Prognosis : guarded "

The Plaintiff was fired on December 7 2005 – With no job offers except the same location and same boss –

Even though New England Gas knew of harassment and had knowledge a Dr stated she could not return to Dexter street _ as stated in document February 21, 2006 D'anna Soehnge , 2006 ( section Q )

-

**DISCUSSION : EARLIER EVIDENCE IS RELEVANT**

The accumulated effects of incidents such as humiliating offensive comments directed at woman at work: sabotaging pranks : sexual remarks : ridicule . is an ongoing pattern of discrimination : See Provencher v CVS Pharmacy 145 F.3d 5 16 ( 1st Cir 1998) The principle underlying Faragher is that the antidiscrimination law is intended to come "into play before the harassing conduct leads to a nervous breakdown " Harris, 510 U.S. at 22

The Eighth Circuit held " Employment marred by Hostility is not substantially equivalent to an otherwise similar position in an amiable environment " Mathieu,273 F3d at 784 . The New England gas company was well aware of the regulations – the laws have been around for along time – one cannot escape liability .

Harassment is injury to a person – That is why we have a stalking statute . It is harmful and criminal .This record is complete with allegations , medical records and testimony- which support the plaintiffs' suffering from Post traumatic stress (PTSD) and severe emotional stress . Constructive discharge is creating a work environment so hostile that a reasonable person would not be forced to quit " as in Pennsylvania State Police v Suders .

The Supreme court held that" unendurable working conditions " are functionally the same as discharge " . The company was aware of the cause of the disability – If you are bitten by a shark – should you be forced back into a pool of sharks: The Plaintiff was ! The New England gas company was the cause of the problem and cannot turn a blinds eye to the reality of the situation .

**Disability Discrimination: PTSD is a Qualified Disability Within the meaning of the ADA**

A person has a disability for the purposes of the ADA if he or she has a physical or mental impairment that substantially limits major life activities, and a record of such Impairment. The ADA requires employers to make reasonable accommodations to enable an otherwise qualified person with a disability to do his or her job.

This company was aware of: Acute stress disorder in February 18, 2004 (section D) a letter by Dr Marzilli. In April 19, 2004 (section F) Dr Marzilli increased to acute stress disorder and panic disorder then on 12/28/04 Butler hospital notified the New England Gas company that it was (PTSD) Post traumatic stress disorder (section O) with a note by Dr Shea. Medication: has been prescribed in 2003 for the panic attacks; and adjusted many times for PTSD and taken still to this day.

In 2005 the plaintiff wrote a letter (section W), to Joan Chaffee of the New England Gas Company in response to their letter (section T) Saying that the plaintiffs job will be terminated: – in absolute fear of being exposed to the guns, violence again. Terrified of returning, effected my thinking and still does today – like an

abused child I am scared to death of being killed. .....Yet the plaintiff still said "there are jobs I can do "I gave examples – but in truth the gas company had union jobs such as; (Section X) in November 1, 2005 a facility maintenance job was available – the union is supposed to sign every job for sick or hurt workers .... No one ever called the plaintiff – but she was bumped from this job in 2002 and was told if a job opening in that

department opened she would have the first pick .as stated in the union manual –page 14 "If an employee is transferred from a job classification because of lack of work.

The employee will be given the option to be restored to that job classification when there is an increase in work "(section Y) The company and the union had the obligation to offer this job to the plaintiff. Instead of working hard to fire her.

Joan Chaffee is the name on the contact section of the job description – by union rules this job should not have been posted till the plaintiff was asked. Would a doctor release? her to this job – and what provisions would you need for your disability? Ms Horn does possesses all the skills for the job because she worked that job for over Nine years – at all locations and studied nights taking classes to get the Rhode Island boilers operators license. At 26.94 an hour this plaintiff is due all back pay from the posted date of this job November 1, 2005. the plaintiff was employed at that time and had no knowledge of the Job until now but the company and the union did. The rules Written in the union book 2002-2007 should be followed.

**THE EMPLOYER TOOK ADVERSE EMPLOYMENT ACTION**

The plaintiff is an individual with a disability, who satisfies the requisite skill, Experience, education and other job – related requirements of the employment position such individual holds. The defendants were aware of the abuse; both verbally and sexually; and lastly physically by her boss Cliff Richer. This employer did not have to bump another employee – or find a new job for this plaintiff: They could have fired the boss for his harassment – or transferred him to Fall River were he was a boss also of the leak survey department.

In some courts, they hold employers failure to accommodate- provides basis for the conclusion that the negative employment action taken by the employer was based solely on the disability. The defendants were aware that returning the plaintiff to that department – Knowing the boss ran a hostile department, even to the point of talks of killing, guns, fear for your life.

Other reasonable accommodations that were not allowed – working nights – The plaintiff could have done the same work 11-7 shift. Not seeing the boss or dealing with any co-workers. At no time after July of 2005 – Did the nurse contact the plaintiff for an update – or offer lite duty. At no time did any one from the company ask – what can we do to work with your disability? Light duty has always been offered before for every Workman's comp- or TDI injury (section ) except in this case.

As Listed on every report given to the nurse (Kathy Wall) The Dr specially states: "

Some restrictions are due to medication s. Most are Psychological and refer to work at the Gas company in particular. "

**ACCOMMODATION REQUESTS WERE REASONABLE**

The defendants claim that the plaintiff bears the burden of proposing Accommodation. Yet according to the EEOC. The guidance confirms that you have no Obligation to provide reasonable accommodation until the disabled individual or his or her representative informs you that he or she needs an adjustment or change at work related to a medical condition. According to the EEOC, this request is supposed to initiate an interactive process (between the individual and you) to determine if there is reasonable accommodation .As stated In Kvorjok v. State of Maine, 259 F . 3d 48, 52-53

"An employer may need, under some circumstances, to initiate an interactive process with the qualified individual in need of accommodation in order to determine if an accommodation may be provided, and what accommodation would be reasonable under the circumstances."

Many doctors such as Dr Marzilli and even the company's own Dr Whatts who said for the plaintiff not to return till she receives treatment – stressed to the company –as a representative for the employee that she had a disability – That needed restrictions .

They stated "The harassment must end "If the company was unsure of what that meant they could have asked for further guidance – of what the plaintiff needed.

Considering that the plaintiff was well qualified for the maintenance facility job .In November of 2005 - : as the posting states on page 14 of the union hand book (Section Y ) Transferred from a job classification –restored to that that job classification or "A position of similar nature "

Just for added information the two men who received the facility maintenance job were both disabled from their last job at the gas company: John Cook could not climb a ladder and could not lift – yet the company gave him the job with retrogression pay (The pay of his last job a backhoe operator). Also Carl Hopkins could not lift over his head yet the company gave him the job also with retrogression pay. This is much more than the plaintiff would have received for doing the whole job.

This Plaintiff has shown that the company was aware of a position –that was a proposed accommodation that is facially reasonable. Kvorjak v State Of Maine, 259 F.3d 48, 55 (1st Cir 2001) The plaintiff has also shown that the position was vacant, and has shown that a vacant position exists for which she was qualified Ozlowski v Henderson, 237 F.3d 837, 840 (7th Cir.2001)

**DEFENDANTS GIVE MORE LEAVE OF ABSENCE FOR MEN THAN WOMAN**

The defendants "The New England gas Company" has given extended leave for years: Such as Don Butler –was out for at least 3 years returned to a light duty job.

Until an opening in meter reading department – giving the company a list of accommodations he had to have for his disability. His seniority was kept and the time out counted toward his retirement as time worked.

Then there was Richard Tottorio who was out over a year and the company never ended his medical, unlike the plaintiffs' at the end of one year the medical ended.

This company has maintained a high standard of extra treatment for men but woman live by a different unfair treatment. Timing of adverse actions: Some courts have held that the timing of employer's adverse employment action can raise an inference of Unlawful discrimination. In Katz v City of Columbus, Accommodation must be Effective and reasonable.

**WHAT JOB CHANGES DID THE COMPANY OFFER?**

The New England Gas Company: Owned Valley Gas, Fall River Gas: Weybosset street and Dexter street and Allen's ave locations – and in no time since February of 2004 when the defendants became aware of the hostility and the illness from the bosses continued abuse. Never did the company make a job change or allow the plaintiff to get away from the abuse. The rules that existed for sixteen years of employment ended when the plaintiff hired a lawyer

.

The company decided after the plaintiff hired a lawyer to deny all Workman's compensation Claims – never in 16 years has the plaintiff had a claim denied till then. After the plaintiff hired a lawyer the company decided for any union job she was able to have, they would test her – alone with out a steward. In sixteen years never has the plaintiff been tested unless it was in the thirty day trail period for the job. The New England gas also owned companies' in Pennsylvania which the plaintiff said she was willing even to take a job there.

The defendants say the plaintiff did not have the qualifications for the jobs she wanted: Her resume clearly states college Education – Owning her own business – Many supervisor positions prior to working at the gas company. The fact still remains Union jobs at all locations did exist and none were offered to the plaintiff. Not on a light duty capacity – (which they have allowed for sixteen years) Not on a different shift – Overtime was being spent in the leak survey department for leaks and crews still working after 3 pm that needed a leak survey tech. – This 3-11 shift was available in leak survey after the gun was seen in the department on 12/07/04.

## Conclusion

In dealing with problems companies must avoid any measure that penalizes the individual who has lodged a sexual harassment complaint. As the Seventh Circuit court of Appeals has warned "A remedial measure that makes the victim of sexual harassment worse off is ineffective per se"

In this case the plaintiff has alleged several instances where physical fear for her life (a weapons Allegation – (Twice in the same building) The defendants cannot show that they acted to prevent the behaviors complained of .It is undisputed that the plaintiff is a member of a protected class and that she considered the defendant's conduct unwelcome.

Evidence of a past history of harassment or discrimination toward woman also helps establish that the defendants knew or should have known of the harassment, but did nothing to stop it. See McCombs v Meijer, 395 F3d 346,353-54 (6th Cir.2005) The defendants prior bad acts show a scheme-pattern – intent – undue prejudice. The company from evidence prior, specific acts of aggression- knew the plaintiff was in imminent danger of bodily harm at the hands of another. (Section M) The company had several letters, assault charges, weapon charges – yet the company did nothing but delay investigations –so it reached no conclusion.

The Vice President of Human resources: D'Anna Soehnge was the end of the company complaint procedure. The plaintiff complained numerous times to her – yet the plaintiff made many documented complaints to lower- level individual's .Such as the nurse and safety director: supervisors that worked in the field with her.

Every higher management in charge of her boss or her department, then when desperate – telling anyone who would listen.

After multiple fruitless attempts to resolve the issue –the plaintiff was forced resign. (Seeing a gun – at work, in her department) She has incurred medical expenses – lost sick days –pension –wages – as a result of being fired due to her disability – and extreme hostile working environment.

The facts in dispute should be determined by a fact finder- There are disputed facts that are all interrelated .They created Frankenstein – the monster still walks;

A jury should be allowed to hear evidence to determine if promptness and thoroughness – were sufficient .

For The foregoing reasons, The Plaintiff Pro Se request the court – That this plaintiff has the right to a fair trial-Opposition to Summary Judgment holds merit.



4/7/08

CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served to Attorney McNamara At Nixon Peabody One Citizens Plaza, Suite 500 Providence RI 02903.

Lynore Horn Pro Se