UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LYNORE HORN, Plaintiff | : | |
| v. | : | C.A. No. 07-142-S |
| SOUTHERN UNION CO. & NEW ENGLAND GAS CO., Defendants. | : | |

**DEFENDANTS' REPLY MEMORANDUM**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendants Southern Union Co. and New England Gas Co. (collectively, "Defendants") hereby submit this memorandum in reply to Plaintiff Lynore Horn's ("Plaintiff") Motion for Opposition to Summary Judgment, along with Plaintiff's supporting memorandum (collectively "Opposition") and Statement of Disputed Facts in Opposition of Motion for Summary Judgment ("Statement").

**Summary of Argument**

First, Plaintiff's Statement does not comply, in form or in substance, with Local Rule Cv 56(a). Furthermore, the evidence shows, and Plaintiff admits, that she was not diagnosed with her alleged disability, Post Traumatic Stress Disorder ("PTSD"), until she commenced her leave of absence in December 2004. Thus, any alleged facts that Plaintiff asserts took place prior to her December, 2004 leave of absence have no bearing on her instant claim that she was discriminated against based on her disability. Lastly, Plaintiff's allegations that she is a qualified individual with a disability and that Defendants had a duty to provide her with a reasonable accommodation are misguided, as Plaintiff was never released by her doctors to return to work prior to her termination.

## Discussion

**I. The Court Should Treat Each Fact In Defendant's Statement of Undisputed Facts as Admitted and Should Disregard the Allegations in Plaintiff's Statement.**

Plaintiff's Statement does not comply, in form or in substance, with Local Rule Cv 56(a). Local Rule Cv 56 provides that "[a]n objecting party that is contesting the movant's Statement of Undisputed Facts shall file a Statement of Disputed Facts, which shall be numbered correspondingly to the Statement of Undisputed Facts, and which shall identify the evidence establishing the dispute, in accordance with the requirements of paragraph (a)(2)." Paragraph (a)(2) of Local Rule Cv 56 provides that each fact "shall be set forth in a separate, numbered paragraph and shall identify the evidence establishing the fact, including the page and line of any document to which reference is made, unless opposing counsel has expressly acknowledged that the fact is undisputed." Indeed, local rules carry the force of law and are binding upon the litigants and the court itself. LaPlante v. OneBeacon Ins. Group, C.A. No. 05-496, 2006 U.S. Dist. LEXIS 76680, at *4 n.2 (D.R.I. Oct. 20, 2006). Pro se litigants, moreover, are not excused from compliance with procedural rules or substantive law. Eagle Eye Fishing Corp. v. U.S. Dep't of Commerce, 20 F.3d 503, 506 (1st Cir.1994). An objecting party's statement, which includes only "speculation, generalities, conclusory assertions, [and] improbable inferences" and is not supported by proper record citation, in accordance with Local Rule Cv 56(a)(2), may be disregarded, and the moving party's facts deemed admitted. Id. (quoting Linder v. Myers, 233 F.R.D. 81, 82 (D.P.R. 2005)). Indeed, the failure of the pro se plaintiff in Bartlett v. American Power Conversion, 2006 WL 2709404 (D.R.I.), to comply with the requirements of Local Rule Cv 56 led the Court to adopt the facts as set forth by the opposing party.

Here, Plaintiff's Statement does not properly identify any evidence establishing that she disputes any of the facts set forth in Defendants' Statement of Undisputed Facts. Plaintiff's Statement does not contain correspondingly numbered paragraphs containing allegations contrary to those in Defendant's Statement of Undisputed Facts. Moreover, Plaintiff's Statement does not identify the evidence establishing any alleged factual disputes. Some of Plaintiff's allegations are wholly unsupported by any reference to documentary evidence, while others include no reference to the page and line of the documents she provides as support. Therefore, the Court should adopt the Defendants' Statement of Undisputed Facts.

Moreover, upon close examination of the documents that Plaintiff cites to support the propositions in her Statement, it is clear that the documents do not even support the stated propositions. For example, in Paragraph 4 of Plaintiff's Statement, she alleges "[i]n 1994 the plaintiff told Bob Ringman a gun was held to her head in the Dexter street garage. (section A)" Not only does Plaintiff fail to specify the document, page and line which she alleges supports this statement in "section A," but after reviewing all the documents Plaintiff submitted in "section A" it is clear that none support this statement. That disconnect between plaintiff's assertions and the actual contents of her attached documents provides further justification for disregarding the allegations contained in Plaintiff's Statement and adopting the facts alleged in Defendants' Statement of Undisputed Facts.[1]

[1] The Court should not treat Plaintiff's Statement as a Statement of Undisputed Facts for the same reasons articulated above. If the Court should decide to treat Plaintiff's Statement as a Statement of Undisputed Facts, Defendants request that they be permitted to submit a Statement of Disputed Facts prior to the Court's adjudication of Defendants' Motion for Summary Judgment.

## II. Most of the Facts Alleged in Plaintiff's Memorandum are Irrelevant to Her Disability Claim and Should Be Disregarded.

Moreover, even if the Court does not disregard the facts asserted in Plaintiff's Statement and Plaintiff's Opposition for failure to comply with the procedural requirements of Local Rule Cv 56, most of the facts that she asserts, although possibly relevant to her suit entitled Lynore Horn v. Southern Union Gas Co. & New England Gas Co., C.A. No. 04-434-S,[2] involving claims of sexual harassment, are wholly irrelevant to the instant claim involving disability discrimination and should be disregarded. There is no dispute that defendants were first notified of Plaintiff's PTSD via a letter dated December 28, 2004, after Plaintiff had begun a leave of absence on December 7, 2004. There is no dispute that Plaintiff did not return to work after she began this leave of absence. Nowhere in her Complaint does Plaintiff allege that Defendants regarded her as disabled before her diagnosis of PTSD. Rather, Plaintiff's Complaint alleges that "Defendant's were aware that Plaintiff was under hospital care for PTSD," Compl. ¶ 9, and that "[t]he Plaintiff was fired with no other job offered – and no allowance for the PTSD," Compl. ¶ 10. Thus, Plaintiff's claims are limited solely to allegations that, due to her PTSD, she was fired or otherwise discriminated against. See Rivera v. Pfizer Pharm., LLC, No. 07-1595, 2008 U.S. App. LEXIS 6354, at *16-20 (1st Cir. March 27, 2008). For this reason, most of the facts in Plaintiff's Opposition and Plaintiff's Statement are wholly irrelevant to the instant dispute because they allegedly occurred before her PTSD diagnosis and therefore are not evidence of harassment on the basis of her PTSD.[3]

[2] Defendants' motion for Summary Judgment in that matter has been argued before Magistrate Judge Almond, and the parties are awaiting issuance of a Report and Recommendation.

[3] For example, Plaintiff's prior leave(s) of absence are not relevant to the instant matter because she was not diagnosed with PTSD until December, 2004. The facts which she alleges contributed to her "harassment" and "acute stress disorder," the allegations of "guns," "black men being dragged by their penis and graphic stories of black woman Being raped and physical violence" and "plaintiff being slammed," Plaintiff's Memorandum in Opposition of Defendants' Motion for Summary Judgment ("Plaintiff's Memo.") at 4, are all completely

*(Footnote continued on next page)*

The only material facts at issue in this matter are those surrounding her leave of absence commencing in December, 2004 and any of Defendants' subsequent actions. As to those facts, there are none in dispute. Defendants do not dispute that Plaintiff was diagnosed with PTSD in December 2004. Defendants do not dispute that they were notified of Plaintiff's PTSD in that month, and that they permitted Plaintiff to take an extended leave of absence on that basis. Plaintiff does not dispute that she was never released by her doctors to return to work. Moreover, there is no dispute that Plaintiff asked for an accommodation, consisting of being hired into one of two non-existent positions, in her November, 2005, letter to Joan Chaffee ("Demand Letter"). Stmt. ¶ 38, Ex. P.

### III. Based on the Undisputed Facts, Plaintiff Is Not a Qualified Individual With a Disability Because Her Doctors Never Released Her to Return to Work.

As discussed in detail in Defendants' Memorandum in Support of Motion for Summary Judgment, Plaintiff cannot establish a prima facie case of disability discrimination because she cannot show evidence that she is a "qualified individual with a disability."[4] 42 U.S.C. § 12112(a) (2007). The plaintiff bears the burden of proving that she could perform the essential functions of her job. Soto-Ocasio v. Fed. Exp. Corp., 150 F.3d 14, 19 (1st Cir. 1998). Therefore, Plaintiff here must present sufficient evidence to this Court that a genuine issue of fact exists as to whether she could return to her leak survey position.

In order to determine if an employee is "qualified" this Court must first inquire whether the individual can perform the essential functions of her position; and, if not, whether any

---

*(Footnote continued from previous page)*
irrelevant to the sole issue Plaintiff has brought before this court: whether she was discriminated against based on her PTSD.

[4] Section 12112 of the ADA provides that no employer "shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (2007).

reasonable accommodation by her employer would allow her to do so. Phelps v. Optima Health, Inc., 251 F.3d 21, 24 (1st Cir. 2001). Courts have consistently held that an individual who has not been released to return to work by his or her doctors is not a qualified individual with a disability under the ADA. See Mack v. State Farm Mut. Auto. Ins. Co., No. 99-2315, No. 97 C 1207, 2000 U.S. App. LEXIS 1012, at *14-15 (7th Cir. Jan. 20, 2000) ("employers are entitled to take employees and their physicians at their word when they represent that they are totally disabled and completely unable to return to work"); Gantt v. Wilson Sporting Goods Co., 143 F.3d 1042, 1047 (6th Cir. 1998) ("An employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA."); Duckett v. Dunlop Tire Corp., 120 F.3d 1222, 1225 (11th Cir. 1997) (plaintiff who was not released by doctors to return to work at time of termination and required an indefinite medical leave was not "otherwise qualified" for any position); Munoz v. H&M Wholesale, Inc., 926 F. Supp. 596, 607-08 (S.D. Tex. 1996) (employee not released by doctors at time of termination not "qualified individual with a disability" under the ADA); Crow v. McElroy Coal Co., 290 F. Supp. 2d 693, 700 (N.D. W. Va. 2003) (same). Plaintiff has presented no evidence, whatsoever, that she could perform the essential functions of her job in leak survey. Because Plaintiff was never released by her doctors to return to work, she was not a "qualified individual with a disability," § 12112(a), under the ADA.

## VI. Defendant Could Not Reasonably Accommodate Plaintiff Because Her Doctors Never Released Her to Return to Work.

There is no dispute as to Plaintiff's request for an accommodation. As indicated in her November, 2005 letter there were "very few" jobs Plaintiff could do, two of which were "Executive Vice President of sexual Harassment and diversity training: For all of Southern Union gas co and Affiliates" or "Assistant to legal counsel, fourth floor." See Stmt. ¶ 38. In her

Demand Letter Plaintiff indicated "I would need a company car, unlimited sick time, A 4 day work week, and like an outside contractor: a year contract . . . Pay In the hundred of thousands." See Stmt., Ex. P at 2 (emphasis added). Thus, there is no dispute that Plaintiff requested one of two jobs that did not exist and, in any such job, Plaintiff would need the series of benefits or perks that she described.

Although an employer may sometimes be required to engage in an interactive process with the individual in need of accommodation, liability hinges upon the premise that, had a good-faith interactive process occurred, the parties could have found a reasonable accommodation that would have permitted the plaintiff to perform the essential functions of her job. Kyorjak v. State of Maine, 259 F.3d 48, 52 (1st Cir. 2001). An employer's failure to engage in this process is "'of no moment'" if the plaintiff could not have performed the duties of the job. Id. at 53 (quoting Soto-Ocasio v. Fed. Exp. Corp., 150 F.3d 14, 19 (1st Cir. 1998)).

In Soto-Ocasio, 150 F.3d at 19, the plaintiff claimed that her employer failed to engage in a meaningful, interactive process with her regarding her request for a reasonable accommodation. The court held, however, that the plaintiff was putting "the cart well before the horse – because no reasonable trier of fact could have found . . . that plaintiff was capable of performing the duties of [her job]." Id. The court held that the employer was not obligated to engage in an interactive process with the plaintiff because her doctors had indicated that she could not return to work. Id.

Plaintiff has presented no evidence to show that she could have worked in any vacant position in December, 2005. The uncontroverted evidence shows that Plaintiff was not qualified to work in any vacant position because her doctors never released her to return to work. Moreover, Defendants were not obligated to engage in an interactive process with Plaintiff

regarding her requested accommodations because she had not demonstrated that she was capable of returning to work in December, 2005. Indeed, the information provided to Defendants from Plaintiff's doctors indicated that she could not return to work "in any capacity." Stmt. ¶ 29. "[E]mployers are entitled to take employees and their physicians at their word when they represent that they are totally disabled and completely unable to return to work." Mack, 2000 U.S. App. LEXIS 1012, at *15. Because Plaintiff's doctors had not released her to return to work, she could not show that she was qualified for a transfer into a vacant position and Defendants were under no obligation to entertain such an accommodation request.

Moreover, even considering Plaintiff's request for an accommodation, an "employer is not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation." Gantt, 143 F.3d at 1046-47. Defendants were entitled to rely on Plaintiff's assertion that she could only perform very few jobs and would need a litany of costly and unrealistic perks in order to return to work. There were simply no positions similar to those Plaintiff suggested that were open, available, and for which she possessed the requisite education, experience and/or skills. Plaintiff was clear about her "needs" in her Demand Letter – the job she could perform must include "a company car, unlimited sick time, A 4 day work week, and like an outside contractor: a year contract . . . Pay In the hundred of thousands." See Stmt., Ex. P at 2. Notwithstanding the fact that Plaintiff was not released to return to work, Defendant was entitled to rely on Plaintiff's assertion that any acceptable job Plaintiff could do must include the benefits she described. Because no such jobs existed for which Plaintiff was qualified, Defendant could not have accommodated Plaintiff in this way.

**V. The Accommodations Plaintiff Suggests in Her Opposition Are Not Reasonable.**

Despite the fact that Plaintiff never requested any accommodations other than those described in her Demand Letter, in Plaintiff's Opposition she suggests a number of accommodations that Defendants should have afforded her. Plaintiff asserts that Defendants should have transferred or fired her supervisor, Cliff Richer, as an accommodation for her disability or, in the alternative, transferred her to a night shift, during which she claims she would not have to "see[] the boss or deal[] with any co-workers." Plaintiff's Memorandum in Opposition of Defendants' Motion for Summary Judgment ("Plaintiff's Memo.") at 15. Notwithstanding the fact that Plaintiff's doctors never released her to return to work, courts have held that an employer is not required to transfer an employee simply to prevent her from having to work with certain coworkers or supervisors. See Prichard v. Dominguez, Case No. 3:05cv40/RV/MD, 2006 U.S. Dist. LEXIS 46607, 45-47 (N.D. Fla. June 29, 2006) (collecting cases). In enacting the ADA, Congress did not intend to interfere with personnel decisions within an organizational hierarchy by requiring an employer to transfer an employee away from coworkers who cause him or her stress. Gaul v. Lucent Technologies Inc., 134 F.3d 576, 581 (3d Cir. 1998); accord Newby v. Whitman, 340 F. Supp. 2d 637, 657 (M.D.N.C. 2004) ("an employer is not required to provide an aggravation-free or stress-free environment, or to reassign an employee away from any supervisor or coworker who may cause stress or conflict.").

In Mack, 2000 U.S. App. LEXIS 1012, at *7, the plaintiff suffered from Obsessive-Compulsive Disorder, and requested, as an accommodation, that he be granted a "guarantee to be left alone" in order to return to work. The court observed that Mr. Mack's request was essentially a request to be reassigned to a position in which he would be allowed to remain at

his desk, without interaction with management, until he reached his retirement. Id. at *15. The court, not surprisingly, held that the employer was not obligated to create this new position for the plaintiff, and that such an accommodation would create an undue hardship on the employer. Id. at *15-16.

Like the plaintiff in Mack, here Plaintiff argues in her Opposition that she should have been accommodated by transferring her to a job in which she would not have to "see[] the boss or deal[] with any co-workers." Plaintiff's Memo. at 15. First, no positions existed at the time of Plaintiff's termination in which she could remain entirely autonomous without interaction from any supervisor or co-worker. Just as in Mack, to require Defendants here to create such a position would certainly impose an undue hardship. Moreover, the ADA does not require this Court to act as a super-personnel department, inserting itself into Defendants' organizational hierarchy by forcing Defendants to transfer Plaintiff away from her supervisor.

Lastly, Plaintiff asserts that Defendants should have offered her light duty, or some other Union position. Plaintiff's Memo. at 19. In light of the fact that Plaintiff's doctors indicated she could not return to work "in any capacity," Stmt. ¶ 29, Defendants were under no obligation to offer Plaintiff an accommodation in the form of a new or different job. Moreover, under the procedures that governed Plaintiff's employment, it was the Union, not the Defendants, which was responsible for notifying a union member of a job upon which he or she could bid. There is no evidence that the Union failed to notify Plaintiff of the jobs she claims were available during her leave of absence. Indeed, by Plaintiff's own admission, she has a limited memory of the period of time during which she was out on leave before her termination because she was heavily medicated and under stress. See Stmt., Ex. J at 68. In any event, under all of the circumstances

described above, Defendants' were under no duty to specially notify Plaintiff of vacant positions.[5]

## Conclusion

For the foregoing reasons, Defendants request that this Court dismiss all claims associated with Plaintiff's complaint, with prejudice, and enter final judgment on behalf of Defendants in this matter.

Respectfully submitted,

SOUTHERN UNION CO. and
NEW ENGLAND GAS CO.

By its attorneys,

/s/ Neal J. McNamara____________
Neal J. McNamara (#4249)
Jillian S. Folger-Hartwell (#6970)
NIXON PEABODY LLP
One Citizens Plaza
Providence, RI 02903
(401) 454-1000
(401) 454-1030 (facsimile)
nmcnamara@nixonpeabody.com
jfolgerhartwell@nixonpeabody.com

Dated: April 23, 2008

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served on Lynore Horn, 88 Alger Avenue, East Greenwich, RI 02818 via regular and certified mail, return receipt requested, this 23rd day of April, 2008.

_/s/ Neal J. McNamara____________

[5] Under the Collective Bargaining Agreement that governed Plaintiff's employment, the Defendants were required to post vacant positions. Stmt. ¶ 42, Ex. Q, art. XI. Defendants fully complied with this duty, and Plaintiff was welcome to bid for any such positions. Whether she would have been able to fulfill the requirements of such positions – specifically attendance – due to the fact that her doctors had not released her to come back to work, is unclear.