UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LYNORE HORN, Plaintiff | : | |
| v. | : | C.A. No. 07-142-S |
| SOUTHERN UNION CO. & NEW ENGLAND GAS CO., Defendants. | : | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S AMENDED STATEMENT OF DISPUTED FACTS**

Defendants Southern Union Co. and New England Gas Co. (collectively, "Defendants") hereby submit this memorandum in reply to Plaintiff Lynore Horn's ("Plaintiff") Amended Statement of Disputed Facts, ("Amended Statement").

**Summary of Argument**

Despite this Court's detailed explanation of the procedure and format required for Plaintiff's Amended Statement, Plaintiff has failed to properly direct the Court to documents which she alleges support her assertions. Plaintiff has also failed to set forth disputed facts in separately numbered paragraphs, as directed by this Court. The affidavit submitted by Plaintiff in connection with her Amended Statement is insufficient to avoid summary judgment in this case. Moreover, the factual disputes that Plaintiff alleges in her Amended Statement are either not material to the instant case, or are not supported by the evidence to which she directs the Court's attention. In addition, many of the facts alleged by Plaintiff in the "Disputed facts" portion of her Amended Statement are wholly unsupported by the documents to which she cites and/or are immaterial to the instant matter. Plaintiff also sets forth a number of alleged facts which occurred prior to her diagnosis of Post Traumatic Stress Disorder ("PTSD") and, therefore, have no bearing on her instant claim that she was discriminated against based on her

PTSD. Lastly, Plaintiff's allegations that she is a qualified individual with a disability and that Defendants had a duty to provide her with a reasonable accommodation are misguided, as Plaintiff was never released by her doctors to return to work prior to her termination.

## Discussion

### I. Plaintiff's Amended Statement Does Not Comply with Local Rule Cv 56.

Local rules carry the force of law and are binding upon the litigants and the court itself. LaPlante v. OneBeacon Ins. Group, C.A. No. 05-496, 2006 U.S. Dist. LEXIS 76680, at *4 n.2 (D.R.I. Oct. 20, 2006). Pro se litigants are not excused from compliance with procedural rules or substantive law. Eagle Eye Fishing Corp. v. U.S. Dep't of Commerce, 20 F.3d 503, 506 (1st Cir.1994). An objecting party's statement, which includes only "'speculation, generalities, conclusory assertions, [and] improbable inferences'" and is not supported by proper record citation, in accordance with Local Rule Cv 56(a)(2), may be disregarded, and the moving party's facts deemed admitted. LaPlante, 2006 U.S. Dist. LEXIS 76680, at *4 n.2 (quoting Linder v. Liggett Myers, 233 F.R.D. 81, 82 (D.P.R. 2005)); accord Horn v. Southern Union Co., C.A. No. 04-434S, Report and Recommendation of Magistrate Judge Almond, at 4-5 (D.R.I. May 21, 2008). [1]

The citations to the documents that Plaintiff provides in her Amended Statement are wholly insufficient. In her Amended Statement, Plaintiff refers to documents in different "sections" with no clear delineation in her exhibits which documents are included in her various "sections." Some pages have a handwritten note in the upper corner indicating a section number, however many documents have no notation whatsoever, some documents have more than one

[1] Magistrate Judge Almond issued a Report and Recommendation granting Defendants' Motion for Summary Judgment in this case just yesterday. A full copy of this Report and Recommendation has been delivered to the Court with the other authorities referenced in this Response.

handwritten "section" number indicated, and Plaintiff provides no way to determine which documents she includes in her "sections." This is contrary to Local Rule Cv 56, the directions provided in this Court's order dated April 29, 2008, and the clear explanation the Court provided during the hearing on this matter. Because Plaintiff has failed to properly conform her Amended Statement to Local Rule Cv 56's guidelines her factual assertions and disputes should be disregarded by this Court and the facts set forth in Defendants' Statement of Undisputed Facts ("Defendants' Statement") should be deemed admitted. See Horn, C.A. No. 04-434S, Report and Recommendation of Magistrate Judge Almond, at 4-5.

## II. Plaintiff's Affidavit is Insufficient to Overcome Summary Judgment.

Plaintiff's affidavit submitted in conjunction with her Amended Statement is insufficient to overcome summary judgment. Pursuant to Fed. R. Civ. P. 56(e), an affidavit must be made on personal knowledge, contain an affirmative showing that the affiant is competent to testify to the matters stated therein, and set forth facts that would be admissible in evidence. Indeed, evidence that would be inadmissible at trial, such as hearsay evidence, may not be considered on summary judgment. Horn, C.A. No. 04-434S, Report and Recommendation of Magistrate Judge Almond, at 26 (D.R.I. May 21, 2008). Indeed, a plaintiff's affidavit which states only in a conclusory fashion that she was discriminated against and/or harassed, with no more "specific" allegations, is insufficient to overcome summary judgment. Id.

Plaintiff's affidavit contains a number of immaterial, unsubstantiated, self-serving and conclusory statements. First, the allegations Plaintiff sets forth on page 1 of her affidavit although possibly relevant to her suit entitled Horn v. Southern Union Gas Co., C.A. No. 04-434-S,[2] involving claims of sexual harassment, are wholly irrelevant to the instant claim involving

[2] As previously noted, Magistrate Judge Almond issued a Report and Recommendation just yesterday, granting Defendants' Motion for Summary Judgment as to all claims in this case.

disability discrimination and should be disregarded. Next, Plaintiff asserts a number of conclusory statements about the Gas Company's policies and procedures about which she is not competent to testify. Next, Plaintiff's statements regarding discussions between the Gas Company and her doctors are inadmissible hearsay. For these reasons, Plaintiff's affidavit is insufficient to overcome the evidence submitted by Defendants in this case.

### III. The Factual Disputes Plaintiff Asserts in Her Statement Are Not Material to the Instant Case, or Are Not Supported by the Evidence.

The disputes Plaintiff sets forth in her Amended Statement are either not accurate, not material, or no such dispute exists based on the evidence she provides. Defendants will address the facts which Plaintiff disputes in her Amended Statement, beginning on page 1 and ending on page 5, as follows:[3]

6. It is unclear from Plaintiff's Statement whether she is disputing that her disability is PTSD, or whether she is simply asserting that her disability is not an "alleged" disability based on the various doctor's letters that she cites to support her diagnosis. Plaintiff cannot dispute that her notarized statement, attached to her charge of discrimination, filed with the Rhode Island Commission for Human Rights, stated "my disability, PTSD does not allow me to return to that hostile environment." See Defendants' Statement of Undisputed Facts ("Defendants' Statement") ¶ 6, Ex. A. Nor can she deny that her Complaint filed in this case clearly identified her disability as PTSD. See Compl. ¶¶ 9 & 10. Whether Plaintiff suffered from acute anxiety and/or stress at some time in the past does not permit her to enlarge the claims she has plead in this matter. Moreover, if she now wishes to assert that her disability was acute anxiety and/or stress disorder, she has failed to exhaust her administrative remedies in relation to such a claim.

---

[3] Defendants will not address those paragraphs of Plaintiff's Amended Statement in which Plaintiff indicated Defendants' facts were "undisputed."

17. It is unclear from Plaintiff's Amended Statement exactly what she disputes in relation to Paragraph No. 17. It appears Plaintiff merely takes issue with Defendants' use of the language "moved to the meter reading department." The circumstances surrounding why and how Plaintiff went into the meter reading department are not material to this suit and Defendants provided this fact simply to present evidence of the skills and jobs that Plaintiff may have been qualified to do for Defendants.

18. It appears that Plaintiff does not dispute the factual assertion in Defendant's Paragraph No. 18, but wishes to dispute a number of the facts which Cliff Richer attested to in his affidavit, attached to Defendants' Statement as Ex. E. Consequently, Defendants will address any such disputes as they arise in connection with the numbered Paragraphs in Defendants' Statement.

19. Plaintiff alleges that the statement in Cliff Richer's affidavit, which reads "[c]onsequently, leak surveyors spend the vast majority of their time in the field," Defendants' Statement ¶ 19 & Ex. E, is "the opinion of the lawyer," Amended Stmt. at 3, ¶ 19. This assertion is belied, however, by the very existence of Mr. Richer's signed and notarized affidavit attesting to the aforementioned fact. This statement is Mr. Richer's statement, and not counsel's opinion.

22. Plaintiff appears to misapprehend Defendants' use of the term "medical leave of absence" to preclude an absence from work due to a work-related injury. Defendants use the term "medical leave of absence" to refer only to a period of time when Plaintiff did not report to work due to an injury or illness.

24. As Plaintiff admits, Dr. Marzilli returned her to work in the leak survey department if certain alleged "harassment," the existence of which Defendants' wholly dispute,

ceased. Plaintiff has presented no evidence to the Court that is contrary to Defendants' statement in Paragraph no. 24.

25. Plaintiff's only dispute in relation to the facts at issue in Paragraph No. 25 is a misapprehension about Defendants' use of the term "leave of absence" to preclude a work-related injury. Again, Defendants use the term "leave of absence" to refer only to a period of time when Plaintiff did not report to work due to an injury or illness.

30. Defendants clarify their factual statement in Paragraph No. 30 that "no other communication" means that Plaintiff's employer ("Gas Company") received no further communication from Plaintiff's doctors regarding her condition. Moreover, Defendants do not deny that they received a December, 2004 letter diagnosing Plaintiff with PTSD from Dr. Shea. The material aspect of the facts stated in Paragraph No. 30 is that Plaintiff's doctors never released her to return to work; a fact Plaintiff does not dispute. The evidence supporting the fact that Plaintiff's doctors never released her to return to work can be found in Ex. K ¶ 8, Ex. J at 63:2-14, and Ex. O at 87:17-23, attached to Defendants' Statement.

31. Plaintiff cannot dispute that the quote referenced in Paragraph No. 31 is accurate, as demonstrated by the Return From Family/Medical Leave Policy, attached to Defendants' Statement as Ex. M. Plaintiff appears to dispute the practice quoted in Paragraph No. 31 by alleging that extensions of FMLA leave time were available. This contention is belied by the text of Ex. M, which provides "The company may fill any position left vacant by an employee who has exhausted FMLA and has continued on an extended approved medical leave for no more than a total of 12 consecutive months (these 12 consecutive months include the maximum FMLA period of 13 weeks and the approved extension)." Ex. M (emphasis added). Thus, the 12 consecutive months referenced in the policy includes an approved extension. Moreover, Plaintiff asserts that because light duty was available to some employees, this somehow disputes the fact

that the company reserved the right to fill a position left vacant by an employee who had taken 12 consecutive months of leave. First, there is no evidence that the information contained in the outline of the Memorandum of Agreement attached to Plaintiff's Amended Statement and dated May 28, 2002, is an accurate description of the terms and conditions of Plaintiff's employment in December, 2004 through December, 2005. Moreover, even if we assume that the information contained in that document is accurate, it is clear that Plaintiff would not have been eligible for a light duty assignment under the terms described in the Memorandum of Agreement because the light duty policy applies to employees who are expected to return to work in their regular job classification within three months and is based upon the employee's physical capabilities. See Memorandum of Agreement at 6, attached to Plaintiff's Amended Statement. As Ms. Soehnge attested in her affidavit, and as Dr. Marzilli testified at his deposition, Plaintiff's doctors never released her to return to work in 2005. See Defendant's Statement of Undisputed Facts ("Defendants' Statement") ¶¶ 30 & 36. Thus, Plaintiff was not eligible in 2005 to participate in the light duty program described in the Memorandum of Agreement.

32. Paragraph No. 32 of Defendants' Statement describes the Gas Company's policy regarding employees who had been out on leave for 12 consecutive months. Plaintiff attempts to dispute this statement by indicating that the Gas Company did not communicate with her or her doctors. Paragraph No. 32 does not allege that the Gas Company communicated with Plaintiff or her doctors, thus Plaintiff has set forth no evidentiary dispute.[4] Plaintiff presents no evidence, whatsoever, that the policy stated in Paragraph 32 is untrue or inaccurately portrayed.

35. Plaintiff provides no evidence that disputes the factual statements in Paragraph No. 35. Whether or not Plaintiff alleged she could have gone out of state is immaterial.

[4] In Paragraph No. 33, Defendants provide evidence that they did, in fact, communicate in such a way with Plaintiff. Plaintiff does not dispute the facts alleged in Paragraph No. 33.

36. Plaintiff provides no evidence to dispute the fact that her doctors advised her not to return to work. Plaintiff states only that there was no communication between Plaintiff's doctors and the Gas Company at or about November/early December 2005. Defendants admit that Plaintiff's doctors did not release her to return to work prior to her termination. See Defendants' Stmt. ¶¶ 30, 36, 37.

37. Plaintiff provides no evidence to dispute the fact that her doctors never released her to return to work. Plaintiff alleges only that it was Defendants' responsibility to seek information regarding her medical status from her doctors. This allegation neither disputes the facts alleged in Paragraph No. 37, nor is it accurate. In fact, Plaintiff's doctors would likely not have released information to the Gas Company about Plaintiff's medical condition without Plaintiff's express consent. An employer has no right to receive information about an employee's medical condition unless that employee is on an FMLA or other statutorily protected leave of absence.[5] Here, Plaintiff had exhausted her FMLA leave, was not covered by workers' compensation, and was merely out on an extended leave.

40. The evidence cited by Plaintiff does not dispute the fact that Plaintiff informed her employer that she could only return to work in one of two fictive positions that would need to be created for her. The evidence to which Plaintiff cites to dispute this fact includes a listing of Gas Company employees, by name and title, and a page from a deposition transcript. Neither of these documents supports the proposition that the jobs Plaintiff requested, including the "perks" she required, existed. See Defendants' Stmt. ¶¶ 39, 40, Ex. K ¶ 12.

[5] Under certain circumstances, such as when an employee is out on a workers' compensation injury, or when and employee is out on an FMLA leave, an employer may have the right to communicate with the employee's doctors about his or her medical condition. This was not the case for Plaintiff during the winter of 2005 because she had exhausted her FMLA leave time, her PTSD was not a work-related injury, and she was simply out on an extended medical leave of absence.

42. Plaintiff provides no evidence that disputes the factual statements in Paragraph No. 42. Whether or not a union representative "signs" for absent employees is immaterial, particularly if that employee is unable to return to work because her doctors have not released her to do so.

43. Plaintiff provides no evidence that disputes the factual statements in Paragraph No. 43, but instead attempts to provide an explanation for why she failed to include any union jobs in her November, 2005, letter to Joan Chaffee ("Demand Letter"). See Defendants' Stmt. ¶ 38, Ex. P. It appears that Plaintiff asserts her employer should have communicated with her doctors about her condition. As discussed, supra, this is not the case.

**IV. Many of the Facts Plaintiff Asserts as "Disputed facts" Are Not Relevant to the Instant Case.**

Most of the facts that Plaintiff asserts in the portion of her Amended Statement entitled "Disputed facts," although possibly relevant to her suit entitled Horn v. Southern Union Gas Co., C.A. No. 04-434-S, are wholly irrelevant to the instant claim involving disability discrimination and should be disregarded. There is no dispute that defendants were first notified of Plaintiff's PTSD via a letter dated December 28, 2004, after Plaintiff had begun a leave of absence on December 7, 2004. There is no dispute that Plaintiff did not return to work after she began this leave of absence. Nowhere in her Complaint does Plaintiff allege that Defendants regarded her as disabled before her diagnosis of PTSD. Rather, Plaintiff's Complaint alleges that "Defendant's were aware that Plaintiff was under hospital care for PTSD," Compl. ¶ 9, and that "[t]he Plaintiff was fired with no other job offered – and no allowance for the PTSD," Compl. ¶ 10. Thus, Plaintiff's claims are limited solely to allegations that, due to her PTSD, she was fired or otherwise discriminated against. See Rivera v. Pfizer Pharm., LLC, No. 07-1595, 2008 U.S. App. LEXIS 6354, at *16-20 (1st Cir. March 27, 2008) (regarding as claim must be explicitly

alleged in complaint). For this reason, most of the facts in Plaintiff's Amended Statement are wholly irrelevant to the instant dispute because they allegedly occurred before her PTSD diagnosis and before she took her final leave of absence in December, 2004.[6] Although Defendants dispute many of these allegations, none are relevant or material to the instant claim.

The only material facts at issue in this matter are those surrounding Plaintiff's leave of absence commencing in December, 2004 and any of Defendants' subsequent actions. As to those facts, there are none in dispute. Defendants do not dispute that Plaintiff was diagnosed with PTSD in December 2004. Defendants do not dispute that they were notified of Plaintiff's PTSD in that month, and that they permitted Plaintiff to take an extended leave of absence on that basis. Plaintiff provides no evidence to dispute that she was never released by her doctors to return to work. Moreover, there is no dispute that Plaintiff asked for an accommodation in the form of one of two non-existent positions, in her Demand Letter. See Defendants' Stmt. ¶ 38, Ex. P.

Defendants respond to the remaining alleged facts set forth in the "Disputed facts" section of Plaintiff's Amended Statement, beginning on page 5, as follows:

31. Plaintiff alleges that the Gas Company did not tell her of jobs that were available.[7] Plaintiff provides no evidentiary support for this proposition and it should thus be disregarded by the Court. To support her allegation that Defendants' hired an investigative team to harass her,

---

[6] For example, Plaintiff's prior leave(s) of absence are not relevant to the instant matter because she was not diagnosed with PTSD until December, 2004. The facts which she alleges contributed to her "harassment" and "acute stress disorder," the allegations of "guns," and abusive or harassing conduct are wholly irrelevant to the instant case because they allegedly took place prior to her diagnosis and thus are not evidence of disability discrimination. Plaintiff's Amended Statement at 6, ¶¶ 1-30.

[7] Under the Collective Bargaining Agreement that governed Plaintiff's employment, the Defendants were required to post vacant positions. Defendants' Stmt. ¶ 42, Ex. Q, art. XI. Defendants fully complied with this duty, and Plaintiff was welcome to bid for any such positions. Whether she would have been able to fulfill the requirements of such positions – specifically attendance – due to the fact that her doctors had not released her to come back to work, is unclear.

Plaintiff directs the Court's attention to what appears to be a screen print out from the Internet listing a number of investigative agencies, with one particular name circled. This document does not support her contention that Defendants hired an investigator to harass Plaintiff.

32. Plaintiff claims that charging of her sick bank for hours she was out of work due to an injury which was determined not to be a workers' compensation injury was discriminatory. The documents she references to support this contention are an email from the Gas Company's nurse, Kathy Wall, informing management about this change, and handwritten notes. These documents do not support Plaintiff's contention because the time that was deducted from Plaintiff's sick bank was leave time she took prior to her diagnosis of PTSD and therefore the Gas Company could not have discriminated against her on that basis.

33. Plaintiff alleges that Gas Company employees were checking her qualifications for jobs, but never contacted her doctor about any such jobs. The documents Plaintiff references to support this contention are an email between Human Resources personnel and other employees to see if Plaintiff held a boiler operator's license because there was no record of any such license in her file. There is no information in this email suggesting any particular motive for this inquiry other than seeking to update Plaintiff's file. Again, as discussed supra, it is neither Defendants' obligation, nor right, to seek medical information about Plaintiff from her doctors.

34. Plaintiff's statements in Paragraph 34 are not supported by the documentary evidence she references. The email that Plaintiff cites to support her statements does not support the proposition that Plaintiff saw a gun on December 7, 2004, that Gas Company employees were or were not discussing "jobs" or "working with her disability or what other locations have part time work" or that these employees were "talk[ing] of firing the plaintiff way before the year is up." Amended Stmt. at 13, ¶ 34. Moreover, Plaintiff alleges that the Gas Company was trying

to terminate her employment before she had been out on leave for 12 consecutive months. This allegation is not material to Plaintiff's claims because it is undisputed that Plaintiff was not terminated until December 7, 2005. See Amended Stmt. at 5, ¶ 44.

35. Plaintiff alleges that Defendants denied that her PTSD was work related. Defendants do not dispute this fact. Defendants continue to take the position that Plaintiff's allegations of harassment, guns and other activities at the Gas Company are wholly false, and that her PTSD was not caused by any work-related incidents.

36. Plaintiff asserts that light duty jobs "were always offered by the company" and the Gas Company's practice was to contact an employee's doctors to discuss light-duty jobs, and the employee's medical limitations. Amended Stmt. at 14, ¶ 36. Plaintiff also alleges that she was not offered a light-duty job in 2005. First, the document to which Plaintiff cites, a letter dated September 8, 2004, offering Plaintiff a light-duty job after an alleged neck/back injury in 2004, does not provide any evidence about the Gas Company's typical practices in relation to light-duty assignments. Moreover, Defendants did not have a right, or a duty, to search out Plaintiff's medical providers and seek information about her medical condition. Lastly, as previously discussed, in 2005 Plaintiff did not qualify for a light-duty job under the program outlined in the Memorandum of Agreement, attached to Plaintiff's Amended Statement.

37. Plaintiff provides no evidence that "the company always degraded woman [sic]" or that men received promotions for which they were not qualified. Amended Stmt. at 14, ¶ 37. The documents Plaintiff references provide no support for either of these contentions. Plaintiff's resume does not support the contention that the company degraded women, placed men in positions for which they were not qualified, or that she was qualified for either of the positions she described in her Demand Letter. In addition, the listing by name, position and address of various Gas Company employees does not support any of Plaintiff's allegations in Paragraph 37.

39. Plaintiff does not dispute that she wrote to Defendants asserting that there were two jobs that she could do, which would both require a number of "perks" or "conditions." See Plaintiff's Amended Stmt. at 5, ¶¶ 38 & 39. There were no such jobs available or even in existence at the time when Plaintiff wrote her Demand Letter. Defendants' Stmt. ¶ 40, Ex. K, ¶ 12. The document Plaintiff references to support her statements in Paragraph 39 does not support any of her contentions regarding what was contained in her Demand Letter, her feelings about her safety, Attorney Black's involvement in depositions, or any of Plaintiff's other contentions in this paragraph.

40. Plaintiff supports her contentions in Paragraph 40 with a page from a deposition of John Shadoian. First, Mr. Shadoian's testimony lacked the proper foundation and is purely anecdotal in nature. Moreover, Mr. Shadoian's testimony does not confirm that the Gas Company had a policy or practice of contacting employees out on extended leaves of absence about posted jobs. Under the collective bargaining agreement governing Plaintiff's employment, the Gas Company is only required to post jobs, not make telephone calls to union members who are out on sick leave to alert them to an open position. See Defendants' Stmt. ¶ 42, Ex. Q, art. XI. Lastly, because Plaintiff does not dispute that she was not released to return to work, any potentially available jobs are not material to her claims because she could not have returned to work in 2005.

41. Plaintiff was never released to return to work in 2005. Defendants' Stmt. ¶¶ 30 & 37. Thus, Plaintiff could not have performed any of the jobs she references in her Amended Statement. Moreover, none of the vacant job postings Plaintiff references provided for the required "perks" or "conditions" Plaintiff asserted she required in her Demand Letter. See Plaintiff's Amended Stmt. at 5, ¶¶ 38 & 39.

42. Plaintiff asserts that a maintenance repair helper position became available in November, 2005 and that the Gas Company should have asked her doctors about the job and/or notified the Plaintiff about this job. First, the job was posted, as evidence by the job posting that Plaintiff references and attached to her Amended Statement. Thus, the Gas Company fulfilled its duty to inform Plaintiff about this job. In addition, as discussed previously, the Gas Company was under no obligation to seek out Plaintiff's doctors and discuss her medical condition. Lastly, Plaintiff was never released to return to work. Defendants' Stmt. ¶¶ 30 & 37. Thus, Plaintiff could not have performed this job.

43. The grievance form that Plaintiff provides to support her allegation that Gas Company employees stated that Plaintiff would not be rehired because she was suing the company and it was too much paperwork for them, provides no evidence of any such statements by Gas Company employees or representatives. Moreover, Plaintiff does not even attest to this alleged "fact" in her attached affidavit.

44. The litany of allegations Plaintiff asserts in Paragraph No. 44 are not supported by the documents to which she refers and each contention has already been addressed elsewhere in this memorandum.

## V. Based on the Undisputed Facts, Plaintiff Is Not a Qualified Individual With a Disability Because Her Doctors Never Released Her to Return to Work.

As discussed in detail in Defendants' Memorandum in Support of Motion for Summary Judgment, Plaintiff cannot establish a prima facie case of disability discrimination because she cannot show evidence that she is a "qualified individual with a disability."[8] 42 U.S.C. § 12112(a) (2007). The plaintiff bears the burden of proving that she could perform the essential

[8] Section 12112 of the ADA provides that no employer "shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (2007).

functions of her job. Soto-Ocasio v. Fed. Express Corp., 150 F.3d 14, 18 (1st Cir. 1998). Courts have consistently held that an individual who has not been released to return to work by his or her doctors is not a qualified individual with a disability under the ADA. See Mack v. State Farm Mut. Auto. Ins. Co., No. 99-2315, No. 97 C 1207, 2000 U.S. App. LEXIS 1012, at *14-15 (7th Cir. Jan. 20, 2000) ("employers are entitled to take employees and their physicians at their word when they represent that they are totally disabled and completely unable to return to work"); Gantt v. Wilson Sporting Goods Co., 143 F.3d 1042, 1047 (6th Cir. 1998) ("An employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA."); Duckett v. Dunlop Tire Corp., 120 F.3d 1222, 1225 (11th Cir. 1997) (plaintiff who was not released by doctors to return to work at time of termination and required an indefinite medical leave was not "otherwise qualified" for any position); Munoz v. H&M Wholesale, Inc., 926 F. Supp. 596, 607-08 (S.D. Tex. 1996) (employee not released by doctors at time of termination not "qualified individual with a disability" under the ADA); Crow v. McElroy Coal Co., 290 F. Supp. 2d 693, 696-697 (N.D. W. Va. 2003) (same). Plaintiff has presented no evidence, whatsoever, that she could perform the essential functions of her job in leak survey. Moreover, based on her Amended Statement, Plaintiff provides no evidence to dispute that she was never released to return to work. Because Plaintiff was never released by her doctors to return to work, she was not a "qualified individual with a disability," § 12112(a), under the ADA.

## VI. Defendant Could Not Reasonably Accommodate Plaintiff Because Her Doctors Never Released Her to Return to Work.

There is no dispute about Plaintiff's request for an accommodation. As indicated in her Demand Letter there were "very few" jobs Plaintiff could do, two of which were "Executive Vice President of sexual Harassment and diversity training: For all of Southern Union gas co and

Affiliates" or "Assistant to legal counsel, fourth floor." See Defendants' Stmt. ¶ 38. In her Demand Letter Plaintiff indicated "I would need a company car, unlimited sick time, A 4 day work week, and like an outside contractor: a year contract . . . Pay In the hundred of thousands." See Defendants' Stmt., Ex. P at 2 (emphasis added). Plaintiff does not dispute that she requested one of two specific jobs and, in any such job, Plaintiff would need the series of benefits or perks that she described. See Amended Stmt. at 5, ¶¶ 38 & 39.

Although an employer may sometimes be required to engage in an interactive process with the individual in need of accommodation, liability hinges upon the premise that, had a good-faith interactive process occurred, the parties could have found a reasonable accommodation that would have permitted the plaintiff to perform the essential functions of her job. Kvorjak v. State of Maine, 259 F.3d 48, 52 (1st Cir. 2001). An employer's failure to engage in this process is "'of no moment'" if the plaintiff could not have performed the duties of the job. Id. at 53 (quoting Soto-Ocasio v. Fed. Express Corp., 150 F.3d 14, 19 (1st Cir. 1998)).

In Soto-Ocasio, 150 F.3d at 19, the plaintiff claimed that her employer failed to engage in a meaningful, interactive process with her regarding her request for a reasonable accommodation. The court held, however, that the plaintiff was putting "the cart well before the horse – because no reasonable trier of fact could have found . . . that plaintiff was capable of performing the duties of [her job]." Id. The court held that the employer was not obligated to engage in an interactive process with the plaintiff because her doctors had indicated that she could not return to work. Id.

Plaintiff has presented no evidence to show that she could have worked in any vacant position in December, 2005. The uncontroverted evidence shows that Plaintiff was not qualified to work in any vacant position because her doctors never released her to return to work. Moreover, Defendants were not obligated to engage in an interactive process with Plaintiff

regarding her requested accommodations because she had not demonstrated that she was capable of returning to work in December, 2005. "[E]mployers are entitled to take employees and their physicians at their word when they represent that they are totally disabled and completely unable to return to work." Mack, 2000 U.S. App. LEXIS 1012, at *15. Defendants were under no obligation to pursue Plaintiff's treating physicians and procure information regarding her medical status. Indeed, Defendants could not have received any such information without Plaintiff's explicit consent. Because Plaintiff's doctors had not released her to return to work, she could not show that she was qualified for a transfer into a vacant position and Defendants were under no obligation to engage in an interactive process to try to find her a job.

An "employer is not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation." Gantt, 143 F.3d at 1046-47. Defendants were entitled to rely on Plaintiff's assertion that she could only perform very few jobs and would need a litany of costly and unrealistic perks in order to return to work. There were simply no positions similar to those Plaintiff suggested that were open, available, and for which she possessed the requisite education, experience and/or skills. Plaintiff was clear about her "needs" in her Demand Letter – the job she could perform must include "a company car, unlimited sick time, A 4 day work week, and like an outside contractor: a year contract . . . Pay In the hundred of thousands." See Defendants' Stmt., Ex. P at 2; Amended Stmt. at 5, ¶¶ 38 & 39. Notwithstanding the fact that Plaintiff was not released to return to work, Defendant was entitled to rely on Plaintiff's assertion that any acceptable job Plaintiff could do must include the benefits she described. Because no such jobs existed for which Plaintiff was qualified, Defendant could not have accommodated Plaintiff in this way.

### VII. The Accommodations Plaintiff Suggests in Her Opposition Are Not Reasonable.

Despite the fact that Plaintiff never requested any accommodations other than those described in her Demand Letter, in Plaintiff's Amended Statement and Plaintiff's Memorandum in Opposition of Defendants' Motion for Summary Judgment ("Opposition"), she suggests a number of accommodations that Defendants should have afforded her. Plaintiff asserts that Defendants should have transferred or fired her supervisor, Cliff Richer, as an accommodation for her disability or, in the alternative, transferred her to a night shift, during which she claims she would not have to "see[] the boss or deal[] with any co-workers." Opposition at 15. Notwithstanding the fact that Plaintiff's doctors never released her to return to work, courts have held that an employer is not required to transfer an employee simply to prevent her from having to work with certain coworkers or supervisors. See Prichard v. Dominguez, Case No. 3:05cv40/RV/MD, 2006 U.S. Dist. LEXIS 46607, 45-47 (N.D. Fla. June 29, 2006) (collecting cases). In enacting the ADA, Congress did not intend to interfere with personnel decisions within an organizational hierarchy by requiring an employer to transfer an employee away from coworkers who cause him or her stress. Gaul v. Lucent Technologies Inc., 134 F.3d 576, 581 (3d Cir. 1998); Newby v. Whitman, 340 F. Supp. 2d 637, 657 (M.D.N.C. 2004) ("an employer is not required to provide an aggravation-free or stress-free environment, or to reassign an employee away from any supervisor or coworker who may cause stress or conflict").

In Mack, 2000 U.S. App. LEXIS 1012, at *7, the plaintiff suffered from Obsessive-Compulsive Disorder, and requested, as an accommodation, that he be granted a "guarantee to be left alone" in order to return to work. The court observed that Mr. Mack's request was essentially a request to be reassigned to a position in which he would be allowed to remain at his desk, without interaction with management, until he reached his retirement. Id. at *15. The

court, not surprisingly, held that the employer was not obligated to create this new position for the plaintiff, and that such an accommodation would create an undue hardship on the employer. Id. at *15-16.

Like the plaintiff in Mack, here Plaintiff argues in her Opposition that she should have been accommodated by transferring her to a job in which she would not have to "see[] the boss or deal[] with any co-workers." Opposition at 15. First, no positions existed at the time of Plaintiff's termination in which she could remain entirely autonomous without interaction from any supervisor or co-worker. Just as in Mack, to require Defendants here to create such a position would certainly impose an undue hardship. Moreover, the ADA does not require this Court to act as a super-personnel department, inserting itself into Defendants' organizational hierarchy by forcing Defendants to transfer Plaintiff away from her supervisor.

Lastly, Plaintiff asserts that Defendants should have offered her light duty, or some other Union position. Opposition at 19. In light of the fact that Plaintiff's doctors indicated she could not return to work "in any capacity," Defendants' Stmt. ¶ 29, Defendants were under no obligation to offer Plaintiff an accommodation in the form of a new or different job. Moreover, under the procedures that governed Plaintiff's employment, Defendants were obligated only to post vacant positions, not call each and every employee who was out on a leave of absence to inform him or her about open jobs. There is no evidence that the Union failed to notify Plaintiff of the jobs she claims were available during her leave of absence. Indeed, by Plaintiff's own admission, she has a limited memory of the period of time during which she was out on leave before her termination because she was heavily medicated and under stress. See Defendants'

Stmt., Ex. J at 68.[9] In any event, under all of the circumstances described above, Defendants' were under no duty to specially notify Plaintiff of vacant positions.

## Conclusion

For the foregoing reasons, Defendants request that this Court dismiss all claims associated with Plaintiff's complaint, with prejudice, and enter final judgment on behalf of Defendants in this matter.

Respectfully submitted,

SOUTHERN UNION CO. and
NEW ENGLAND GAS CO.

By its attorneys,

/s/ Neal J. McNamara____________
Neal J. McNamara (#4249)
Jillian S. Folger-Hartwell (#6970)
NIXON PEABODY LLP
One Citizens Plaza
Providence, RI 02903
(401) 454-1000
(401) 454-1030 (facsimile)
nmcnamara@nixonpeabody.com
jfolgerhartwell@nixonpeabody.com

Dated: May 22, 2008

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served on Lynore Horn, 88 Alger Avenue, East Greenwich, RI 02818 via regular and certified mail, return receipt requested, this 22nd day of May, 2008.

_/s/ Neal J. McNamara____________

[9] Even assuming the outline of the Memorandum of Agreement attached to Plaintiff's Amended Statement accurately describes the terms and conditions of her employment in December, 2005, she would not be eligible for light duty under the terms described therein because she could not return to work "in any capacity" in 2005. Defendants' Stmt. ¶ 29.