UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

LYNORE HORN,                          :
                Plaintiff,            :
                                      :
        v.                            :      CA 07-142 S
                                      :
SOUTHERN UNION GAS CO.                :
& NEW ENGLAND GAS CO.,                :
                Defendants.           :

## REPORT AND RECOMMENDATION

David L. Martin, United States Magistrate Judge

Before the Court is a motion for summary judgment filed by Defendants Southern Union Co. ("Southern Union") and New England Gas Co. ("New England Gas") (collectively, "Defendants" or "the Gas Company").  See Defendants' Motion for Summary Judgment (Document ("Doc.") #24) ("Motion" or "Motion for Summary Judgment").  Plaintiff Lynore Horn ("Plaintiff" or "Horn") has filed an opposition to the Motion.  See Plaintiff['s] Motion for Opposition to Summary Judgment (Doc. #28) ("Opposition").  The Motion has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  After listening to the arguments presented, reviewing the memoranda and exhibits submitted, and performing independent research, I recommend that the Motion be granted.

## I.  Facts

Reading her pro se Complaint generously, see United States v. Genao, 281 F.3d 305, 313 (1st Cir. 2002)("courts should read pro se complaints less strictly than lawyer-drafted pleadings"), Plaintiff alleges that Defendants violated the Americans with Disabilities Act of 1990 ("ADA") by terminating her employment on or about December 7, 2005.  Plaintiff contends that Defendants were aware that she suffered from post-traumatic stress disorder

("PTSD"), but they did not provide her with a reasonable accommodation for this disability.  See Plaintiff['s] Memorandum in Opposition of Defendants' Motion for Summary Judgment ("Plaintiff's Mem.") at 1.  Plaintiff also appears to allege that her termination was an act of retaliation.  See Complaint ¶ 1 ("the plaintiff was fired due to an employment retaliatory injury").

Plaintiff began working for Defendants' predecessor, Providence Gas, in 1989.  Defendants' Local Rule 56(a) Statement of Undisputed Facts (Doc. #25) ("SUF") ¶ 8.  After holding several positions with Providence Gas between 1989 and 1992, Plaintiff began working within the facilities maintenance department in January 1992.  SUF ¶¶ 9-13.  In May 1999, Plaintiff transferred to the customer service department where she underwent training until October 1999.  SUF ¶¶ 14-15.  At that time, Plaintiff chose to return to the facilities maintenance department after being informed by management that the impending acquisition of Providence Gas by Southern Union, placed her at risk of being "bumped" to a less favorable position in the construction and maintenance department because of her low seniority within customer service.  SUF ¶¶ 15-16.

In September 2002, Plaintiff was bumped from her position in facilities maintenance, see Plaintiff['s] Amended Statement of Disputed Facts in Opposition to Motion for Summary Judgment (Doc. #32) ("ASDF"), Section ("Sec.") 2 at 1 (Letter from Butler to Horn of 8/26/02), and shifted to the meter reading department, SUF ¶ 17.  However, she remained there for less than two weeks, see SUF, Ex. B (excerpts from Deposition of Lynore Horne ("Horne Dep.")) at 74, and then moved to the leak survey department, see

SUF ¶ 18.[1]  Plaintiff worked in that position until December 7, 2004.  Id.

Plaintiff began to seek medical care from Dr. Robert Marzilli, a psychologist, in September, 2003.  SUF ¶ 21.  In February 2004, Dr. Marzilli told Plaintiff that "she was suffering from an acute stress disorder which appeared to be work related."  ASDF, Sec. 17 (Letter from Marzilli of 2/18/04).  He advised her to remain out of work until further notice and suggested that she contact her primary care physician, Dr. Ernest Zuena, for a medical evaluation.  See id.  On or about February 17, 2004, Plaintiff notified the Gas Company that she was unable to work.  SUF, Ex. G (Memorandum from Wall to Horn of 2/18/04).

In June of 2004, Dr. Marzilli released Plaintiff to return to work.[2]  SUF ¶ 24.  Plaintiff did so, but in August she injured her back and/or neck and was out of work for a period of time.  SUF ¶ 25.

On December 7, 2004, Plaintiff, according to her affidavits, observed a co-worker at the Gas Company with a gun and was placed in fear for her life.  ASDF, Sec. 1 (Affidavit of Plaintiff dated

---

[1] Plaintiff's response to SUF ¶ 18 is confusing.  See ASDF ¶ 18 (responding "Undisputed Statement" but also indicating "Disputed").  The Court is satisfied that the statement "On or about September 15, 2002, Plaintiff moved into the leak survey department and worked in that position until December 7, 2004," SUF ¶ 18, is supported by the record.

[2] The release was documented in a letter addressed "To Whom It May Concern."  SUF, Ex. H (Letter from Marzilli of 6/4/04).  Dr. Marzilli wrote:

> This letter is to inform you that Ms. Lynore Horn is being released by me to return to work on Monday, June 7, 2004.  It should be noted that Ms. Horn is capable of returning to her customary job only if the harassment, which she has experienced, ceases.  If this cannot be assured, then I would insist that she be reassigned to a different department.  I trust that you understand the importance of this.

SUF, Ex. H.

5/8/08 ("Plaintiff's 5/8/08 Aff.")) at 1; id., Sec. 23 at 3
(Affidavit of Plaintiff dated 7/11/06 ("Plaintiff's 7/11/06
Aff.")) ¶ 23.  Immediately after this incident, Plaintiff left
work and never returned.  SUF ¶ 27.  Shortly after Plaintiff's
last day at work in December 2004, she began seeing Dr. Holly
Tyrell, a psychiatrist, in addition to Dr. Marzilli.  SUF ¶ 28.

In December 2004 Dr. Marzilli provided the Gas Company with
a letter indicating that he advised Plaintiff to "remain out of
work for the immediate future."  SUF ¶ 29.  On February 17, 2005,
Dr. Marzilli's office completed a Modified Duty Assessment form
indicating that Plaintiff's "psychological & emotional
limitations prevent her from returning to work at New England
[Gas] in any capacity at this time."  Id. (alteration in
original).  On February 28, 2005, Dr. Marzilli completed a
Certification of Health Care Provider form indicating that the
date upon which Plaintiff would be able to return to work was
"not known at this point."  Id.  Plaintiff's doctors never
released her to return to work.  SUF ¶ 30.

The Gas Company's Return from Family/Medical Leave Policy
provides in part:

> The Company may fill any position left vacant by an
> employee who has exhausted FMLA and has continued on an
> extended approved medical leave for no more than a total
> of 12 consecutive months[3] (these 12 consecutive months

---

[3] Plaintiff disputes this statement, taking specific issue with
the phrase "no more than a total of 12 consecutive months ...."  ASDF
¶ 31.  Plaintiff asserts: "extensions available – light duty
available," id., and cites initially to ASDF, Sec. 41 (Memorandum of
Agreement) at "page 7 number 11 -14," id.  However, the Court finds
nothing in the reference Plaintiff cites which contradicts the
statement.  Plaintiff's remaining citation, "paragraph 4 and 5," id.,
of the Family/Medical Leave Policy are reproduced below:

> The Company will consider reemployment of an employee who has
> exhausted FMLA, and has continued on an approved medical leave
> for more than twelve (12) months, to the position last held or

include the maximum FLMA [sic] period of 13 weeks and the approved extension).

SUF, Ex. M (Return from Family/Medical Leave Policy).

Pursuant to this policy, it was the Gas Company's practice to inform an employee who had been on a leave of absence for one year that termination would occur unless the employee demonstrates that he or she has been released to return to work and that return is imminent.[4]  SUF ¶ 32.  On November 23, 2005, Joan Chaffee ("Chaffee"), the Supervisor of Labor Relations for New England Gas, sent a letter to Plaintiff which stated "unless you notify the Company that you have been released to return to work and your return to work is imminent, your employment will terminate automatically without further notice at the close of business December 7, 2005."  SUF ¶ 33.  The Gas Company sent

---

an equivalent position requiring similar skills and ability providing such a position is available.  Skills, prior work experience, seniority and application of the labor agreement will be considered in discussing appropriate placement.  This discussion is not a guarantee that a position will be available.

Employees may bid on posted positions while on FMLA and/or approved medical leave.  A position may be held for an employee considered to be a successful candidate (as defined [by] the labor agreement) for up to two (2) months beyond their FMLA leave.  The company may bypass an individual who continues on an approved leave beyond the two (2) months.

SUF, Ex. M (Return from Family/Medical Leave Policy).  The statement "no more than a total of 12 consecutive months," id., appears in the paragraph which immediately precedes the two paragraphs quoted above. The Court finds nothing in these paragraphs which contradicts the statement.  Accordingly, SUF ¶ 31 (which quotes SUF, Ex. M) is deemed admitted.

[4] Plaintiff disputes this fact.  ASDF ¶ 32.  However, the evidence she cites in support of her denial does not contradict ¶ 4 of the Affidavit of D'Anna Soehnge ("Soehnge Aff."), SUF, Ex. K, which is the basis for SUF ¶ 32.  Although Defendants mistakenly cited to ¶ 9 (instead of ¶ 4) of the Soehnge Aff. as support for SUF ¶ 32, the Court finds SUF ¶ 32 to be established.

similar letters to other employees who, like Plaintiff, had been
out of work for 12 months.  SUF ¶ 34.

After receiving the November 23, 2005, letter from Chaffee,
Plaintiff discussed the possibility of returning to work with her
doctors.[5]  SUF ¶ 35.  Both Dr. Marzilli and Dr. Tyrell expressed
in or around late November or early December of 2005 that
Plaintiff should not return to work at that time.[6]  SUF ¶ 36.

In response to Chaffee's November 23, 2005, letter,
Plaintiff wrote to Chaffee indicating that she could not return
to her previous job, but that there were two jobs she could
perform at the Gas Company: 1) "Executive Vice President of
sexual Harassment and diversity training: For all of Southern
Union gas co and Affiliates," SUF ¶ 38; or 2) "Assistant to legal
counsel, fourth floor," id.  Plaintiff set forth a number of
conditions, benefits, and perks that she would require to perform
the above-referenced positions, including a "company car,
unlimited sick days, and a four day work week ... full medical,"

---

[5] Plaintiff disputes this fact "in part," ASDF ¶ 35, asserting
that Defendants' attorney "left off, even willing to leave state," id.
Assuming that by this statement Plaintiff means that she told her
doctors that she was willing to leave the state in order to return to
work, the evidence she cites to support this contention fails to do
so.  See id. (citing ASDF, Sec. 6 (Horn Dep.) at 64-65).  While
Plaintiff's testimony appears to reflect her willingness to work out-
of-state, it does not contradict SUF ¶ 35 in any respect.  See ADSF,
Sec. 6 (Horn Dep.) at 64-65.  Accordingly, SUF ¶ 35 is deemed
admitted.

[6] Plaintiff disputes this fact, see ASDF ¶ 36, stating that: "No
communication with company's doctor and the company took place," id.
(citing ASDF, Sec. 1 (Affidavit of Plaintiff dated 5/8/08
("Plaintiff's 5/8/08 Aff.")) at 2).  The meaning of this statement is
unclear.  In the affidavit to which she cites, Plaintiff appears to
indicate that she instructed her doctors to fill out any paperwork
sent by Defendants and for the doctors to update Defendants as to what
improvements she had made.  The paragraph concludes: "The company
stopped communicating in October of 2005[] with any Doctors – and just
wrote a letter as to being fired."  Id.  The affidavit does not
contradict the evidence cited by Defendants in support of SUF ¶ 36.
Accordingly, SUF ¶ 36 is deemed admitted.

SUF ¶ 39, and a salary of "$300,000," id.  These were not positions which currently existed within the Gas Company.[7]  SUF ¶ 40.  Consequently, on December 7, 2005, D'Anna Soehnge, Vice President of Human Resources, responded to Plaintiff in writing and terminated her employment because she refused to return to her previous job classification and her conditions for her return to work were unreasonable.  SUF ¶ 44.

## II. Travel

Plaintiff originally filed her Complaint in the state superior court on or about April 2, 2007.  See Notice of Removal (Doc. #1), Attachment ("Att.") 1 (Complaint).  Defendants removed the action to this Court on April 18, 2007, see Notice of Removal, and filed their Answer (Doc. #3) on April 25, 2007, see Docket.  The instant Motion for Summary Judgment (Doc. #24) was filed on March 3, 2008.  See id.  Plaintiff filed her Opposition (Doc. #28) on April 7, 2008, along with a Statement of Disputed Facts in Opposition of Motion for Summary Judgment (Doc. #29) ("Plaintiff's Statement of Disputed Facts" or "PSDF").  See id.

On April 29, 2008, the Court conducted a hearing on the Motion for Summary Judgment.  At the hearing, the Court informed Plaintiff that her PSDF did not comply with District of Rhode Island Local Rule Cv 56.  See Order Directing Plaintiff to Comply with Local Rule Cv 56 (Doc. #31).  The Court directed Plaintiff

---

[7] Plaintiff indicates that she agrees that these jobs may not have all existed at this time but disagrees that she was suggesting that these positions be created for her.  ASDF ¶ 40.  Plaintiff states that "corporate legal in the year 2000 had a legal assistant[,] Ms. Lavault," id., that the company had a "[s]afety director," id., and that in previous years it had a director of community relations, see id.  However, Plaintiff cites no evidence that these positions were compensated at or anywhere near the level Plaintiff indicated she would require.  See SUF, Ex. P (Letter from Plaintiff to Chaffee) at 2 ("I'm thinking $300,000."); id. ("Pay in the hundred of thousands").  Accordingly, to the extent that Plaintiff denies that she was suggesting that new positions be created for her, such denial is rejected.

to file within ten days an amended statement of disputed facts which complied with this local rule. See id. at 1. A written order containing this directive was issued the same day. See id.

On May 12, 2008, Plaintiff filed her ASDF (Doc. #32). See Docket. The Court conducted a further hearing on the Motion for Summary Judgment on June 10, 2008, and, thereafter, took the matter under advisement. See id.

## III. Summary Judgment Standard

"Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to a material fact and that the moving party is entitled to a judgment as a matter of law.'" Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004)(quoting Fed. R. Civ. P. 56(c)). "'A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law.'" Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000)(quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)).

In ruling on a motion for summary judgment, the court must examine the record evidence "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000)(citing Mulero-Rodríguez v. Ponte, Inc., 98 F.3d 670, 672 (1st Cir. 1996)). "[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." Coyne v. Taber Partners I, 53 F.3d 454, 460 (1st Cir. 1995). Furthermore, "[s]ummary judgment is not appropriate merely because the facts

offered by the moving party seem more plausible, or because the opponent is unlikely to prevail at trial.  If the evidence presented is subject to conflicting interpretations, or reasonable men might differ as to its significance, summary judgment is improper."  Gannon v. Narragansett Elec. Co., 777 F. Supp. 167, 169 (D.R.I. 1991)(citation and internal quotation marks omitted).

Nevertheless, the non-moving party may not rest merely upon the allegations or denials in its pleading, but must set forth specific facts showing that a genuine issue of material fact exists as to each issue upon which it would bear the ultimate burden of proof at trial.  See Santiago-Ramos, 217 F.3d at 53 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505 (1986)).  Moreover, the evidence presented by the nonmoving party "'cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial.'" Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (citing Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)).  "Even in employment discrimination cases where elusive concepts such as motive or intent are at issue, summary judgment is appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation."  Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)(internal quotation marks omitted); see also Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990); Kriegel v. Rhode Island, 266 F.Supp.2d 288, 294 (D.R.I. 2003).

## IV.  Discussion

### A.  The ADA

The ADA prohibits an employer from discriminating against "a qualified individual with a disability because of the disability

9

of such individual." Soto-Ocasio v. Fed. Express Corp., 150 F.3d 14, 18 (1st Cir. 1998)(quoting 42 U.S.C. § 12112); see also Freadman v. Metro. Prop. & Cas. Ins. Co., 484 F.3d 91, 99 (1st Cir. 2007)("The ADA prohibits discrimination against 'a qualified individual with a disability because of the disability of such individual in regard to ... terms, conditions, and privileges of employment.'")(quoting 42 U.S.C. § 12112(a))(alteration in original). The burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05, 93 S.Ct. 1817 (1973), applies to a claim of discrimination brought pursuant to the ADA. Freadman v. Metro. Prop. & Cas. Ins. Co., 484 F.3d at 99. First, the plaintiff must establish a prima facie case of disability discrimination. Id. If the plaintiff presents sufficient evidence of such a case, the burden then shifts to the defendant to "articulate a legitimate, non-discriminatory reason for its employment decision and to produce credible evidence to show that the reason advanced was the real reason." Id. (quoting Tobin v. Liberty Mut. Ins. Co., 433 F.3d 100, 105 (1st Cir. 2005)). If the employer produces such evidence, the burden then shifts back to the plaintiff to establish that the articulated reason is merely a pretext for discrimination. Id.

**B. Prima Facie Case**

To state a prima facie case of disability discrimination, a plaintiff must prove by a preponderance of the evidence that: 1) she was disabled within the meaning of the ADA; 2) she was a qualified individual; and 3) she was discharged because of her disability. Phelps v. Optima Health, Inc., 251 F.3d 21, 24 (1st Cir. 2001). "A qualified individual under the ADA is one 'able to perform the essential functions of [her position] with or without reasonable accommodation.'" Id. at 25 (quoting Ward v. Mass. Health Research Inst., Inc., 209 F.3d 29, 33 (1st Cir. 2000))(alteration in original). The analysis of whether an

10

individual is qualified occurs in two steps: first, whether the individual can perform the essential functions of her position; and second, if she is unable to perform the essential functions, whether any reasonable accommodation by her employer would allow her to do so.  Id.

Defendants argue that Plaintiff cannot establish a prima facie case of disability discrimination because she cannot demonstrate that she is a qualified individual with a disability. In particular, Defendants point out that there is no dispute that Plaintiff could not perform the essential functions of her position in the leak survey department.  See Defendants' Memorandum in Support of Motion for Summary Judgment ("Defendants' Mem.") at 6.  Thus, in Defendants' view, Plaintiff was not by definition "a qualified individual with a disability." 29 C.F.R. § 1630.2(m); see also Defendants' Mem. at 7.  The Court agrees.

Plaintiff's doctors never released her to come back to work prior to her termination.  SUF ¶ 30.  Moreover, Plaintiff's response to Chaffee's November 23, 2005, letter made clear that Plaintiff could not return to work in the leak survey department:

> The subject of returning to work:
> I am not allowed to return to a hostile environment.  But there are jobs I can do at the gas company, (very few) but a few that would allow me to work, and to heal from my illness.

SUF, Ex. P (Letter from Plaintiff to Chaffee).  Accordingly, I find that Plaintiff could not perform the essential functions of her position in the leak survey department at the time she was terminated in December of 2005.  See Duckett v. Dunlop Tire Corp., 120 F.3d 1222, 1225 (7th Cir. 1997)(finding that plaintiff who had not been released by his doctor to return to work and who required an indefinite medical leave was not "otherwise qualified" for any position); see also Feldman Am. Mem'l Life

11

Ins. Co., 196 F.3d 783, 791 (7th Cir. 1999)(noting that when
employees (and/or their physicians) represent that they are
totally disabled or wholly unable to work, employers and
factfinders are entitled to take them at their word).

Having determined that Plaintiff was unable to perform the
essential functions of her position, the next question is whether
there was any reasonable accommodation by her employer which
would have allowed her to do so.  See Phelps v. Optima Health,
Inc., 251 F.3d at 25.  The burden is on Plaintiff to show the
existence of a reasonable accommodation.  See id. at 26; see also
Kvorjak v. Maine, 259 F.3d 48, 55 (1st Cir. 2001)("[T]he
plaintiff bears the burden of proposing an accommodation that
would enable him to perform his job effectively and is, at least
on the face of things, reasonable.").  "Reasonable accommodation
may include 'reassignment to a vacant position.'"  Phelps v.
Optima Health, Inc., 251 F.3d at 27 (quoting 42 U.S.C. §
1211(9)(B)).  However, Plaintiff bears the burden of proof in
showing that such a vacant position exists, see id., and that she
was qualified for the position, see Ozlowski v. Henderson, 237
F.3d 837, 840 (7th Cir. 2001).

Plaintiff fails to meet her burden.  An employer is not
required by the ADA to create a new job for an employee or to re-
establish a position that no longer exists.  See Phelps v. Optima
Health, Inc., 251 F.3d at 27.  Plaintiff identifies no evidence
in the record which shows that the position of "Executive Vice
President of sexual Harassment and diversity training: For all of
Southern Union gas co and Affiliates," SUF, Ex. P at 1, which she
identified as one of the "very few," id., jobs which she could
perform, existed as of December 2005.  Indeed, Plaintiff appears
to concede that the position did not exist.  See ASDF ¶ 40

(agreeing that "they[8] may not have all existed at this time").

With respect to the other position which Plaintiff identified, "Assistant to legal counsel, fourth floor," SUF, Ex. P at 2, Plaintiff states that "corporate legal in the year 2000 had a legal assistant[,] Ms. Lavault," ASDF ¶ 40.  However, Plaintiff identifies no evidence in the record that this position was vacant in December 2005.  Moreover, Plaintiff's description of the duties which she would perform as a legal assistant is strong evidence that it was to be a new position and unlike any existing legal assistant position:

> Assistant to legal counsel, fourth floor.  Working directly with Attorney Black, Assisting him on the truth, on the many lawsuits that follow.  I would work with him to assist him on how to end the pain before multimillion dollar suits start.  In the following years many lawsuits will follow, I could give the company a helpful hand at resolving the pain that this company has contributed to. I would represent the legal side of harassment.  I would help start the company's new zero tolerance policy, and help to *resolve any, any harassment*, hav*ing* [9] Attorney black, and the President of southern Union only as my superiors, A lot of good could be accomplished.

SUF, Ex. P at 2; see also ASDF, Sec. 36 at 7 (same).

Finally, any doubt as to whether the legal assistant position was a new position or an existing position is eliminated by Plaintiff's specification of the compensation and other

---

[8] "The pronoun "they" must necessarily refer to the positions of "Executive Vice President of sexual Harassment and diversity training: For all of Southern Union gas co and Affiliates," SUF ¶ 38, and "Assistant to legal counsel," id., because those are the "positions" to which SUF ¶ 40 refers, see SUF ¶¶ 38, 40.

[9] In the original the italicized words (or portions of these words) may have a line drawn through them.  See SUF, Ex. P at 2.  It is difficult to make this determination with certainty, and the Court has, therefore, reproduced the paragraph in its entirety.  However, even if the italicized words (or portions of words) are stricken, it is clear from the remainder of the paragraph that the job duties which Plaintiff sought to perform were to be new duties.

benefits which she required to perform this job.

> Again I would need a company car, unlimited sick time, A
> 4 day work week, and like an outside contractor: a year
> contract... Pay in the hundred of thousands[.]

Id.  Such lavish compensation and benefits would not be
associated with a legal assistant's position or, for that matter,
with any position for which Plaintiff may have been qualified.
Thus, Plaintiff cannot show that the proposed accommodation was
reasonable.  See Ríos-Jiménez v. Principi, 520 F.3d 31, 41 (1st
Cir. 2008)(stating that plaintiff must "show that the accommo-
dation would have enabled her to perform the essential functions
of the job—and that the accommodation would have been reasonable
in light of the relevant factors such as expense, size of the
employer, etc.").[10]

Moreover, in 2005 Plaintiff was a member of a union which
had a collective bargaining agreement with her employer.  SUF ¶
41.  The collective bargaining agreement that covered Plaintiff's
position in the leak survey department included provisions that
prevented Plaintiff from being reassigned into another position

---

[10] In her ASDF, Plaintiff appears to identify "Safety director,"
ASDF ¶ 40, and "Director of community relations," id., as positions in
which she was capable of working in December of 2005.  However,
Plaintiff did not identify these positions in her response to
Chaffee's letter.  There is also no evidence that these positions were
vacant in December 2005.  In addition, there is no reason to believe
that Plaintiff's compensation and fringe benefits demands relative to
these positions would have been any less than those stated in her
response to Chaffee's letter.  Finally, these were not positions in
the leak survey department, and the duties required by the positions
were not comparable to the duties she performed in that department.

Plaintiff also appears to suggest that a reasonable accommodation
would have been to fire or transfer "the boss for his harassment ...,"
Plaintiff['s] Memorandum in Opposition of Defendants' Motion for
Summary Judgment ("Plaintiff's Mem.") at 15, or allow her to work
nights, see id.  However, Plaintiff's response to Chaffee's letter
cannot reasonably be interpreted as allowing for the possibility that
a mere change in supervisors or hours would enable Plaintiff to return
to work in the leak survey department.

covered by the collective bargaining agreement; rather, Plaintiff was required to bid into vacant union positions.[11]   SUF ¶ 42.   In her letter to Chaffee, Plaintiff did not suggest any union positions she could take that would permit her to return to work.[12]   SUF ¶ 43.

Lastly, changing Plaintiff from an employee in the leak survey department to an "assistant to legal counsel, fourth floor," is not a reasonable accommodation to assist Plaintiff in the performance of her job.   It is a completely different job. It is a change in the essential functions of the employment.   See Munoz v. H & M Wholesale, Inc., 926 F.Supp. 596, 608 (S.D. Tex. 1996)(concluding that changing plaintiff from a laborer to a light duty worker is not a reasonable accommodation because it is a change in the essential functions of the employment); see also Ríos-Jiménez v. Principi, 520 F.3d at 42 n.9 ("An employer's obligation to make reasonable accommodations does not require the employer to rewrite the essential elements of a job description or to reallocate those functions to other workers.").

---

[11] Plaintiff disputes that she "was required to bid into vacant union positions," ASDF ¶ 42, but the evidence she cites does not support her denial, see id. (citing ASDF, "Section 8 Union book Page 23 Notice of vacancies; Paragraph 5").   Rather, it merely states that "[a]n application [to fill a vacancy] will be accepted for an employee absent during the period of posting if it is signed by a Steward." Id., Sec. 8.   This does not contradict the statement that Plaintiff "was required to bid into vacant union positions," SUF ¶ 42. Accordingly, SUF ¶ 42 is deemed admitted because it is supported by the summary judgment record.

[12] Plaintiff disputes this fact "in part."   ASDF ¶ 43.   She states: "The Doctor not the plaintiff had to return her to work and the plaintiff had no knowledge of Union position(s) available- Each position or light duty – or moving to another location should have been discussed with doctors – no communication was given with company."   Id.   While this statement may provide an explanation as to why Plaintiff did not suggest any union positions she could take that would permit her to return to work, the statement does not contradict the fact that her letter did not identify any such positions. Accordingly, the Court finds that SUF ¶ 43 is admitted.

Thus, I find that Plaintiff has failed to show that there was a vacant position for which she was qualified.  I further find that the additional accommodations which she specified she required, a company car, unlimited sick time, a four day work week, a one year contract, and pay in the hundreds of thousands, were not "on the face of things, reasonable." Kvorjak v. Maine, 259 F.3d at 55.  Accordingly, Plaintiff has failed to meet her burden of establishing a prima facie case of disability discrimination.

### C. Interactive Process

In some cases, an employee's request for an accommodation may trigger a duty on the part of the employer to engage in an interactive process. Enica v. Principi, 544 F.3d 328, 338 (1st Cir. 2008); Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d at 23.  This "'interactive process' is to be 'informal' and a means of uncovering 'potential reasonable accommodations' that could overcome the employee's disability." Tobin v. Liberty Mut. Ins. Co., 433 F.3d 100, 109 (1st Cir. 2005)(quoting 29 C.F.R. § 1630.2(o)(3) (2005)).  The degree of interaction varies in accordance to the circumstances of each case.  Enica v. Principi, 544 F.3d at 339; Kvorjak v. Maine, 259 F.3d at 52 (noting First Circuit's preference "to resolve the issue on a case-by-case basis"); see also Tobin v. Liberty Mut. Ins. Co., 433 F.3d at 109 ("the scope of the employer's obligation in this [interactive] process is not crystal clear")(alteration in original).

It is the employee's initial request for accommodation which triggers the employer's obligation to participate in the interactive process of determining one. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d at 24.  In cases where there has been a breakdown of that process, courts should attempt to isolate the cause of the breakdown and then assign responsibility. Id. (citing Beck v. Univ. of Wis. Bd. of Regents, 75 F.3d 1130, 1135

16

(7th Cir. 1996)).  However, liability for failing to adequately
engage in the interactive process "nonetheless depends on a
finding that, had a good faith interactive process occurred, the
parties could have found a reasonable accommodation that would
enable the disabled person to perform the job's essential
functions."  Kvorjak v. Maine, 259 F.3d at 52 (citation omitted);
see also Sullivan v. Raytheon Co., 262 F.3d 41, 48 (1st Cir.
2001)(holding that employer was not required to engage in an
interactive process with plaintiff because he "presented no
evidence that he was capable of returning to work as a security
guard, even with a reasonable accommodation"); Soto-Ocasio v.
Federal Express Corp., 150 F.3d at 19 (finding plaintiff's
assertion that employer failed to engage in a meaningful
interactive process to be "of no moment ... because no reasonable
trier of fact could have found, on this record, that plaintiff
was capable of performing the duties of operations agent, with or
without reasonable accommodation").

     In the instant case, Defendants sent Plaintiff a letter on
November 23, 2005, advising her that she had been "continuously
absent from work since December 8, 2004," SUF, Ex. N (Letter from
Chaffee to Horn of 11/23/05), and that "[t]he Company's policy
regarding extended leaves of absences does not provide for leaves
in excess of one year," id.  The letter further advised Plaintiff
that unless she notified the Gas Company that she had been
released to return to work and that her return to work was
imminent, her employment would terminate automatically without
further notice at the close of business on December 7, 2005.  Id.
Plaintiff responded to this letter by stating that she was "not
allowed to return to a hostile environment," SUF, Ex. P at 1, and
that there were only a "very few," id., jobs at the Gas Company
which she could do, see id.  Plaintiff identified as examples of
these jobs "Executive Vice President of sexual Harassment and

17

diversity training: For all of Southern Union gas co and Affiliates," id., and "Assistant to legal counsel, fourth floor," id. at 2.  For both positions, Plaintiff specified that she would need a company car, unlimited sick leave, a four day work week, a one year contract, and pay in the hundreds of thousands.  See id. Plaintiff made clear that jobs of this nature "are the only way I can heal from the pain."  Id.

Defendants replied to Plaintiff's communication on December 7, 2005, stating in part:

> In your written response ... you indicate that your willingness to return to work is subject to numerous conditions the Company does not consider reasonable. Accordingly, due to your prolonged absence from work, and your unwillingess to return to your former job classification, your employment with New England Gas Company is being terminated, effective immediately.

SUF, Ex. R (Letter from Soehnge to Horn of 12/7/05).

This Court has already determined that the accommodations which Plaintiff requested were not, on their face, reasonable. The ADA does not require an employer to promote a disabled employee, see Munoz v. H & M Wholesale, Inc., 926 F.Supp. at 608, or to increase his or her compensation, see Tenbrink v. Fed. Home Loan Bank, 920 F.Supp. 1156, 1164 (D. Kan. 1996)(holding that ADA did not require employer to increase plaintiff's pay for working thirty hours per week to a rate that would make his gross pay equal to the amount he earned when he was working forty hours per week or to a rate above the amount paid other workers performing the same job); Rhodes v. Bob Florence Contractor, Inc., 890 F.Supp. 960, 967 (D. Kan. 1995)(same).  The jobs which Plaintiff identified, even assuming she was qualified for them, were clearly above the level which she had been working in the leak survey department.  Plaintiff was, in effect, seeking a promotion.  This is clearly demonstrated by the compensation and fringe benefits which she specified she would require to perform

18

these jobs.[13]

To the extent that Plaintiff contends that Defendants were obligated to do more than to notify Plaintiff that the conditions which she attached to her return to work were not reasonable, the Court rejects such contention.  Plaintiff made clear that there were only a "very few" jobs at the Gas Company which she believed she could perform and that to perform them she would require a huge increase in her compensation and a substantial decrease in her hours of employment.  Defendants were entitled to take Plaintiff at her word and to conclude that further interaction with Plaintiff regarding accommodation was pointless given Plaintiff's insistence on numerous conditions that were neither required by the ADA nor reasonable.  To the extent that the interactive process may have broken down, the blame lies largely with Plaintiff because her response to Chaffee's November 23,

_____

[13] Plaintiff asserts (in the additional disputed facts portion of her ASDF) that "[t]he company worked in 2005 not to tell employee of jobs available - or what ways they could work with her disability: instead they hired an investigation team to harass her, and every member of her family."  ASDF at 13 ¶ 31.  The Court finds this assertion unpersuasive for two reasons.  First, the evidence Plaintiff cites to support it is nothing more that a listing of investigators. See ASDF, Sec. 33 at 1 (listing of investigators).  Thus, Plaintiff's assertion is unsupported, and the Court rejects it on that basis.  Cf. Ríos-Jiménez v. Principi, 520 F.3d 31, 38 (1st Cir. 2008)(finding district court did not abuse its discretion in deeming employer's statement of undisputed facts admitted where Plaintiff ignored requirement of local rule that "[a]n assertion of fact ... shall be followed by a *citation* to the *specific page or paragraph* of identified record material supporting the assertion.")(quoting D.P.R.R. 56(e)(emphasis added))(alterations in original).  Second, even if the Gas Company failed to notify Plaintiff of jobs that were available in 2005, see ADSF at 15 ¶ 41 (asserting that "[m]any union jobs came available in 2005"), the Gas Company had no obligation to disseminate information about such vacancies beyond what was required by the collective bargaining agreement.  Finally, the Court is compelled to observe that Plaintiff's present contention that there were "[m]any union jobs," id., available in 2005 which she was capable of performing is directly at odds with her November 2005 representation to the Company that there were "very few," SUF, Ex. P at 1, jobs which she could do, see id.

2005, letter indicated that Plaintiff was not seeking a reasonable accommodation for a disability. Rather, Plaintiff was seeking compensation for wrongs which she believed she had suffered at the hands of Defendants.

Moreover, even if Defendants were obliged to engage in further dialogue with Plaintiff beyond their letter of December 7, 2005, (a proposition with which this Court disagrees) such failure does not warrant the denial of Defendants' motion because there is no evidence in the record that Plaintiff was capable of returning to her job in the leak survey department even with a reasonable accommodation at the time of her termination. See Sullivan v. Raytheon Co., 262 F.3d at 48; Soto-Ocasio v. Fed. Express Corp., 150 F.3d at 19. Plaintiff's doctors had not released her to return to work.

Accordingly, I find that Defendants did not fail to engage in the interactive process beyond what was warranted by the circumstances in this case. To the extent the process may have broken down, the failure was mainly due to Plaintiff's insistence on conditions which were not reasonable and some of which were clearly not intended to accommodate her disability but to compensate her for perceived past wrongs by Defendants. Finally, there is no evidence that Plaintiff was in fact able to return to work in the leak survey department. Accordingly, Defendants were not required to engage in the interactive process.

### D.  Retaliation

The ADA's retaliation provision provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter." Freadman v. Metro. Prop. & Cas. Ins. Co., 484 F.3d at 106 (quoting 42 U.S.C. § 12203(a))(alteration in original). Requesting an accommodation is protected conduct for purposes of the ADA's retaliation provision. See id. (citing Wright v.

CompUSA, Inc., 352 F.3d 472, 478 (1st Cir. 2003)); cf. Torres-
Negrón v. Merck & Co., 488 F.3d 34, 44 (1st Cir. 2007)("An
employee has engaged in an activity protected by Title VII if she
has either opposed any practice made unlawful by Title VII, 'or
made a charge, testified, assisted, or participated in any manner
in an investigation, proceeding, or hearing under [Title VII].'"
(quoting 42 U.S.C. § 2000e-3(a)(alteration in original).  An ADA
plaintiff may assert a claim for retaliation even if she fails to
succeed on a disability claim.  Id. (citing Soileau v. Guilford
of Maine, Inc., 105 F.3d 12, 16 (1st Cir. 1997)).

    To establish a claim of retaliation, a plaintiff must show
that 1) she engaged in protected conduct; 2) she suffered an
adverse employment action; and 3) there was a casual connection
between the protected conduct and the adverse employment action.
Id.; see also Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d at
25.  Once the plaintiff makes a prima facie showing of
retaliation, the McDonnell Douglas burden-shifting approach is
employed and defendant must articulate a legitimate, non-
retaliatory reason for its employment decision.  Calero-Cerezo v.
U.S. Dep't of Justice, 355 F.3d at 26.  If defendant meets this
burden, the plaintiff must show that the proffered legitimate
reason is in fact a pretext and that the job action was the
result of the defendant's retaliatory animus.  Id.; see also
Enica v. Principi, 544 F.3d at 343 ("the burden shifts to the
plaintiff to show that 'the proffered legitimate reason is in
fact a pretext and that the job action was the result of the
defendant's retaliatory animus'")(quoting Calero-Cerezo).

    In neither her Complaint nor her memorandum does Plaintiff
clearly identify any protected conduct as being the basis for her
retaliation claim.  The Court will assume that Plaintiff contends
that she engaged in protected conduct by asking for
accommodations in her reply to Chaffee's letter of November 23,

2005.[14]   The Court will further assume that Plaintiff contends that the adverse action which she suffered as a result was her termination.   This additional assumption is necessary because Plaintiff does not explicitly identify the adverse employment action which she suffered following her engagement in protected conduct.[15]   The termination occurred on December 7, 2005, no more than two weeks after she requested accommodations.

   Although close temporal proximity between two events may give rise to an inference of a causal connection, the inference is not necessarily conclusive where it is considerably weakened

---

[14] The Court bases this assumption in large measure on the fact that there is no temporal proximity between the adverse action of Plaintiff's termination and any other protected activity.   Thus, to the extent that Plaintiff may contend that the protected activity was the filing of a complaint with the Rhode Island Commission for Human Rights on May 13, 2004, see Horn v. Southern Union, et al., C.A. No. 04-434 S, slip. op. at 13 (D.R.I. May 21, 2008)(Report and Recommendation of Almond, M.J.)(noting the filing of a complaint on May 13, 2004, alleging sex discrimination and harassment), the almost nineteen month period separating the filing of that complaint and Plaintiff's termination effectively negates any causal connection, see Bennett v. Saint-Gobain Corp., 507 F.3d 23, 33 (1st Cir. 2007)(finding that sixteen month gap between filing of grievance and plaintiff's subsequent termination to be "sufficiently large so that, without some corroborative evidence, it will not support an inferred notion of a causal connection between the two"); Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 11 n.5 (1st Cir. 2005)(noting "that the passage of eighteen months between the protected conduct and the allegedly retaliatory action undercut the temporal proximity argument")(citing Lewis v. City of Boston, 321 F.3d 207, 219 (1st Cir. 2003)); see also Ramírez Rodríguez v. Boehringer Ingelheim Pharm., Inc., 425 F.3d 67, 85-86 (1st Cir. 2005)(finding two month temporal proximity between filing of discrimination complaint and plaintiff's termination insufficient to establish a causal connection); Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 25 (1st Cir. 2004)("Three and four month periods have been held insufficient to establish a causal connection based on temporal proximity.").

[15] While "[t]he adverse employment action requirement [of a retaliation claim] may be satisfied by showing the creation of a hostile work environment or the intensification of a pre-existing hostile environment," Quiles-Quiles v. Henderson, 439 F.3d 1, 8 (1st Cir. 2006), here Plaintiff did not work after December 7, 2004.   Thus, the adverse employment action necessarily cannot be the creation or exacerbation of hostile work environment.

by other facts in the record.  Lewis v. City of Boston, 321 F.3d
207, 220 (1st Cir. 2003); id. at 219 (finding "the inference
carried by the temporal proximity ... dissipates when
consideration is given to the attendant circumstances"); see also
Rosenfeld v. Egy, 346 F.3d 11, 17 (1st Cir. 2003)(finding
inference of retaliatory motive "considerably weakened by other
facts in the record," including "strong evidence that
[defendant]'s non-renewal of [plaintiff]'s license would have
occurred irrespective of their history").  Here, the Gas Company,
in accordance with its written policy, notified Plaintiff: 1)
that she had been continuously absent from work for almost one
year; 2) that this leave had commenced after Plaintiff had
exhausted all forms of state and federal guaranteed family and
medical leave; 3) that the Company's policy regarding extended
leaves of absences did not provide for leaves in excess of one
year; and 4) that unless Plaintiff notified the Company that she
had been released to return to work and that her return to work
was imminent, her employment would terminate automatically
without further notice on December 7, 2005.  SUF, Ex. N.  Thus,
as was the case in Rosenfeld, there is strong evidence in the
record that Plaintiff's termination would have occurred
irrespective of her request for accommodation unless she
responded that she had been released to return to work and that
her return was imminent.  The Court has already noted that
Plaintiff's doctors had not released her to return to work.
Thus, I find that Plaintiff is unable to show a casual connection
between her request for an accommodation and the Gas Company's
termination of her employment notwithstanding the temporal
proximity of the two actions.

Even if Plaintiff were able to show a causal connection,
Plaintiff cannot meet her burden of showing that the Gas
Company's proffered reason for terminating her was a sham and

that the actual motive was to retaliate against Plaintiff for
making a request for accommodation.  See Hodgens v. Gen. Dynamics
Corp., 144 F.3d 151, 170 (1st Cir. 1998)("it is the employee's
burden to show pretext").  Plaintiff identifies no evidence in
the record demonstrating that the reason advanced by the Gas
Company was a pretext for retaliation, and the Court's own review
discloses none.  See Lewis v. City of Boston, 321 F.3d at 220
(affirming summary judgment where plaintiff presented no credible
evidence demonstrating that the reasons advanced by defendant
were pretexts from which a fact finder could infer discriminatory
animus).  No reasonable juror could find that Plaintiff's request
for an accommodation had any bearing on the Gas Company's
decision to terminate her on December 7, 2005, because the Gas
Company had already stated its intention to terminate Plaintiff
as of that date (unless she responded that she had been released
to return to work and that her return was imminent) before
Plaintiff made her request for accommodation.  cf. Freadman v.
Metro. Prop. & Cas. Ins. Co., 484 F.3d at 106 (finding no
causation where plaintiff's request to work at home occurred
after boss had already made decision to remove plaintiff from
important project).  Accordingly, Plaintiff's retaliation claim
fails, and Defendants are entitled to summary judgment with
respect to it.

**E.  Hostile Work Environment**

Plaintiff makes some reference in her Complaint to a hostile
work environment, see Complaint ¶ 5, and also in her memorandum,
see Plaintiff's Mem. at 21 ("extreme hostile working
environment").  However, Plaintiff's sex-based hostile work
environment claim was considered and rejected by the Court in
Horn v. Southern Union Gas Co., et al., C.A. No. 04-434 S, slip.
op. at 26 (D.R.I. May 21, 2008)(Report and Recommendation of
Almond, M.J.)(recommending that defendants' motion for summary

24

judgment on Plaintiff's gender-based hostile environment claim be
granted).  That action considered and addressed Plaintiff's
allegations "through December 2004," id. at 8, including her
claim that a co-worker showed her a gun, causing her to leave
work the same day and never return, see id. at 12.  The present
action covers the period from that date forward.  Because it is
undisputed that Plaintiff did not work after December 7, 2004,
there is no hostile work environment claim to consider.

**V.  Summary**

     After Plaintiff had been absent from work for almost a full
year due to PTSD, her employer, in accordance with its written
policy, notified Plaintiff that unless she advised the company
that she had been released to return to work and that her return
was imminent, her employment would be terminated.  Plaintiff
responded that she was not allowed to return to her former
position, but that there were a few jobs in the company which she
could do.  However, for each of the positions which Plaintiff
identified, she specified that she be paid in the "hundred[s] of
thousands" for a four day work week and that she be given
unlimited sick leave and a company car.

     Because Plaintiff could not perform the essential functions
of her position in the leak survey department at the time she was
terminated in December of 2005, she cannot show a prima facie
case of disability discrimination.  Plaintiff cannot show that
her employer failed to grant her a reasonable accommodation
because her employer was not required to create a new job for her
("Executive Vice President of sexual Harassment and diversity
training") and Plaintiff fails to show that the other job which
she identified ("Assistant to legal counsel, fourth floor") was
vacant and that she was qualified to perform it.  Moreover, the
conditions which Plaintiff attached to her performance of the
jobs she indicated she was capable of performing were not

25

reasonable.

Defendants were entitled to take Plaintiff at her word regarding the conditions which she required to perform these jobs.  Therefore, it was reasonable for Defendants to conclude that further interaction with Plaintiff regarding accommodation was pointless.  Although the Court does not find that there was a breakdown in the interactive process, even if there was such a breakdown, the blame lies largely with Plaintiff because of her specification of conditions which were patently unreasonable. Moreover, even if Defendants failed to engage in the interactive process, such failure is of no consequence because Plaintiff cannot show that she was capable of returning to work in the leak survey department.

Plaintiff's retaliation claim fails because she cannot show a causal connection between her engaging in protected conduct and the termination of her employment.  Although there is a close temporal proximity between her request for accommodation and her termination, the inference of a causal connection between the two actions is negated by the fact that Defendants advised Plaintiff of their intent to terminate her before she made her request for accommodations.  To the extent that Plaintiff may contend that her protected activity was something other than her request for accommodation, the lack of any temporal proximity between such activity and her termination prevents Plaintiff from showing a causal connection between that activity and her termination. Moreover, even if Plaintiff were able to show a causal connection between any protected activity and her termination, she fails to meet her burden of showing that the proffered reason for terminating her was pretext and that the actual motive was to retaliate against Plaintiff for that protected activity.

Finally, with respect to Plaintiff's reference to a hostile work environment, such claim was considered and rejected by the

26

court in <u>Horn v. Southern Union Gas Co.</u>, C.A. No. 04-434 S.  It is not part of this action.

## VI.  Conclusion

For the reasons stated above, I find that the Motion for Summary Judgment should be granted, and I so recommend.  Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt.  <u>See</u> Fed. R. Civ. P. 72(b); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision.  <u>See</u> <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).


<u>/s/ David L. Martin</u>
DAVID L. MARTIN
United States Magistrate Judge
January 30, 2009